STATE v. WILLIE SMITH.

(Filed 23 July, 1965.)

**1. Criminal Law § 143—**

A plea of *nolo contendere* does not preclude defendant from prosecuting an appeal.

**2. Statutes § 2—**

Trade within the purview of Art. II, § 29 includes any employment or business embarked in for gain or profit.

**3. Statutes § 5—**

Where a statute gives authority to a county to regulate the operation of "public pool rooms, billiard parlors, dance halls, and any club," the doctrine of *ejusdem generis* applies, and the word "club" must be construed "nightclub."

**4. Statutes § 2—**

A statute authorizing a single county to regulate the operation of pool rooms, dance halls, and nightclubs located within 300 yards of the property of any public school or church building is void as a local act regulating trade. Constitution of North Carolina, Art. II, § 29.

**5. Counties § 1—**

The exercise of the police power by a county will not be declared void because the regulation recites an invalid statute as the grant of power for the enactment if there are other valid authorizations for such enactment.

**6. Statutes § 2—**

The fact that a statute is local and regulates trade does not render it void if the regulation of trade is merely incidental or consequential and if the regulation prohibits all of a certain type of activity on Sunday and its primary effect is not the regulation of trade but the requirement of proper observance of Sunday.

**7. Statutes § 4—**

A statute may be constitutional in part and unconstitutional in part, and if its parts are separate and independent the valid part may stand and the invalid part be rejected.

**8. Statutes § 2; Counties § 3.1—**

Where the only effect of an ordinance is to proscribe designated commercial activities on Sunday, such ordinance may not be upheld under G.S. 153-9(55), since the proscription of the ordinance is entirely commercial.

**9. Counties § 3.1; Constitutional Law § 24—**

Defendant was charged with operating a nightclub between the hours of 2:00 a.m. and 3:00 a.m. on Sunday under a county ordinance proscribing certain commercial activities between the hours of 2:00 a.m. until midnight on Sunday on property within 300 yards of any public school or church building. *Held:* The ordinance is unreasonable and discriminatory and violates due process, since its proscriptions have no reasonable relationship to the maintenance of peace and quiet during the operation of public schools or during church services.

APPEAL by defendant from *Martin, S. J.,* November 30, 1964 Special Criminal Session of FORSYTH.

This criminal action tests the constitutionality of a county ordinance. Defendant herein unsuccessfully attempted to test it in *Smith v. Hauser,* 262 N.C. 735, 138 S.E. 2d 505.

Defendant is the owner of the Walkertown Country Club, located in a structure which is approximately 280 yards from a Baptist church building in rural Forsyth County outside the city limits of any incorporated town. This church never holds services after 11:00 p.m. or before daylight. For the past ten years defendant has operated this club, except on holidays, only one night a week, Saturday. He charges an admission fee and sells sandwiches, soft drinks, potato chips, tobacco, and similar items. To assist him, he employs 13 persons, of whom 5 are musicians — a drummer, saxaphone player, guitar player, and two vocalists form a "combo." Defendant also has a phonograph. There are no loud speakers outside the building. Most of the patrons of this club do not arrive until 11:00 p.m. or afterwards, and defendant usually operates until approximately 3:00 a.m. on Sunday.

On the night of April 25, 1964, between 100 and 150 persons came to defendant's club. They were dancing, sitting in parties at various tables, talking, having snacks to eat and something to drink. From 11:00 p.m. until 3:00 a.m., when defendant discontinued operations for the night, there was much coming and going at the club. When defendant closed his club at 3:00 a.m. on April 26, 1964, a deputy sheriff arrested him under a warrant, issued by the Clerk of the Municipal Court of the City of Winston-Salem, which charged:

"Willie Smith on or about the 26th day of April 1964, at and in the County aforesaid and outside the jurisdiction of the City of Winston-Salem, and the Town of Kernersville being the owner and operator of a club where persons associate for common purpose,

which club and the club building wherein it was operated was and is located within 300 yards of the property on which is located a church building, did unlawfully and wilfully operate said club and play music therein after the hour of two o'clock A. M. and until three o'clock A. M. on Sunday, April 26, 1964, in violation of the ordinance of the Board of Commissioners of Forsyth County, duly enacted on April 20, 1964, adopted pursuant to authority granted by Chapter 1071 of the North Carolina Sessions Laws of 1953 as amended by Chapter 943 of the North Carolina Session Laws of 1961, against the statute in such cases made and provided and against the peace and dignity of the State. . . ."

By Sess. Laws of 1953, ch. 1071, the legislature authorized the Board of Commissioners of Forsyth County, *inter alia,* "in all portions of Forsyth County not embraced within the jurisdictions of the City of Winston-Salem and the Town of Kernersville," after public notice and hearing, and upon adoption of an appropriate resolution setting forth in full the power or powers to be exercised: "(3) To regulate and license the operation of pool rooms, billiard parlors, and other establishments of like kind." By Sess. Laws of 1961, ch. 943, this section was rewritten to read as follows:

"(3) To regulate or prohibit the operation of public poolrooms, billiard parlors, and dance halls, and any club where persons may associate for a common purpose, which club building is located within 300 yards of the property on which is located any public school or church building."

Sess. Laws of 1953, ch. 1071, § 4, made the violation of any resolution adopted in accordance with its provisions a misdemeanor punishable by a fine not exceeding $50.00 or imprisonment not exceeding 30 days, with each day's violation being a separate offense. On April 20, 1964, after reciting compliance with the requirements of the two acts and that "the health, morals, comfort, safety, convenience, and welfare of the people" required such action, the Board of Commissioners duly adopted the following resolution:

"BE IT RESOLVED by the Board of Commissioners for the County of Forsyth, pursuant to Chapter 1071, 1953 Session Laws, as amended by Chapter 943, 1961 Session Laws of the General Assemblies of North Carolina, the following regulation is hereby in all respects adopted:

'It shall be unlawful for any person, firm, corporation or association and same are hereby prohibited from operation between

the hours of 2:00 o'clock a.m., on Sunday and 12:00 o'clock midnight Sunday, any club where persons may associate for a common purpose, which club is located within 300 yards of the property on which is located any public school or church building, and at any such club all music shall cease at 1:00 o'clock a.m. on Sunday and same shall not be resumed until after 12:00 o'clock midnight on Sunday; that this regulation shall be applicable in all portions of Forsyth County not embraced within the jurisdiction of the City of Winston-Salem and the Town of Kernersville.' "

After trial and conviction in the Winston-Salem Municipal Court, defendant appealed to the Superior Court of Forsyth County, where, before plea, he demurred and moved to quash the warrant, for that, *inter alia,* Sess. Laws of 1953, ch. 1071, as amended by Sess. Laws of 1961, ch. 943, violates N. C. Const., Art. II, § 29; and Art. I, § 17. Judge Martin overruled the demurrer and denied, by the entry of a formal order, the motion to quash.

Defendant then entered a plea of *nolo contendere* to the charge contained in the warrant. After hearing the State's evidence, which was uncontradicted and is detailed above, the court entered judgment that defendant pay a fine of $25.00 and the costs. Upon the grounds previously urged in support of his demurrer and motion to quash, defendant then moved in arrest of judgment. Judge Martin denied this motion, as well. Defendant appeals, assigning as error the overruling of his motions and the judgment against him.

*T. W. Bruton, Attorney General, and James F. Bullock, Assistant Attorney General, for the State.*

*Hatfield and Allman and Roy G. Hall, Jr., for defendant appellant.*

SHARP, J.   Defendant is not precluded by his plea of *nolo contendere* from prosecuting this appeal, *United States v. Bradford,* 160 F. 2d 729 (2d Cir.), as he would not have been by a plea of guilty. For the purpose of this case only, that plea has the effect of a plea of guilty. *Fox v. Scheidt,* 241 N.C. 31, 84 S.E. 2d 259; 22 C.J.S., Criminal Law § 425 (4) (1961). In *State v. Warren,* 113 N.C. 683, 684, 18 S.E. 498, 498, it is said:

"The defendant having pleaded guilty, his appeal could not call in question the facts charged, nor the regularity and correctness in form of the warrant. * * * The appeal could only bring up for review the question whether the facts charged, and of which the

defendant admitted himself to have been guilty, constitute an offense punishable under the laws and constitution."

Defendant's first challenge to the resolution is that its source, Sess. Laws of 1953, ch. 1071, § 1(3), as amended by Sess. Laws of 1961, ch. 943, § 1½(3), is a local act regulating trade and is therefore void under N. C. Const., Art. II, § 29, which prohibits the General Assembly from passing any local, private, or special act regulating, *inter alia,* trade. The Attorney General contends, on the contrary, that the acts in question are not within the prohibition of N. C. Const., Art. II, § 29, but are a legitimate legislative exercise of the police power. He relies upon *State v. Chestnutt,* 241 N.C. 401, 85 S.E. 2d 297, in which it was held that a local act prohibiting *all* motor-vehicle racing on Sunday in Wake County did not violate N. C. Const., Art. II, § 29, but was a proper exercise of the State police power by the legislature. See Note, 36 N.C.L. Rev. 537. Speaking through Bobbitt, J., the Court said, however, that, "were the statute directed solely against labor, *e.g.,* compensated employment, or trade, *e. g.,* business ventures, for profit, in relation to the conduct of motor vehicle races on Sunday in Wake County, the question posed would be serious indeed." *State v. Chestnutt, supra* at 403, 85 S.E. 2d at 299.

Both the enactments in question here apply only to Forsyth County and are clearly local acts. *McIntyre v. Clarkson,* 254 N.C. 510, 119 S.E. 2d 888. When they authorize the Forsyth County Board of Commissioners to regulate public pool rooms, billiard parlors, and dance halls, they purport to regulate trade, for, under the previous decisions of this Court, trade "within the meaning of Article II, Section 29 of our Constitution, includes any employment or business embarked in for gain or profit." *Speedway, Inc. v. Clayton,* 247 N.C. 528, 533, 101 S.E. 2d 406, 410; *accord, State v. Dixon,* 215 N.C. 161, 1 S.E. 2d 521; *State v. Worth,* 116 N.C. 1007, 21 S.E. 204. When, to this enumeration of pool rooms, billiard parlors, and dance halls, the General Assembly added "and any club where persons may associate for a common purpose," Sess. Laws of 1961, ch. 943, § 1½(3), did it mean only a club operated as a business venture, "a commercial establishment serving food . . . and often featuring music, dancing and other forms of entertainment: nightclub," or did it also mean to include "an association of persons for social and recreational purposes or for the promotion of some common object (as literature, science, political activity) usu. jointly supported and meeting periodically, membership in social clubs usu. being confirmed by ballot and carrying the privilege of use of the club property"? These and similar definitions of *club* are to be found in Webster's New International Dictionary (3d Ed. 1961). If, instead of *club,* the

General Assembly had used the term *night club,* a designation which nowadays we readily understand to mean only a commercial enterprise, no one would question its meaning. In the instant case we entertain no doubt whatever that in Sess. Laws of 1953, ch. 1071, § 1(3), as amended by Sess. Laws of 1961, ch. 943, § 1½(3), the legislature used the word *club* to mean only one having a business character. The doctrine of *ejusdem generis* is applicable. It is conceivable that the members of a chess club, a discussion group reading "The Great Books," a chamber-music group, or even a bridge club might become so enthralled by their activities that for their own protection someone should impose a curfew upon them, but we cannot imagine that either the General Assembly or the County Commissioners of Forsyth would attempt to do it. Ch. 1071, Sess. Laws of 1953, as amended by Sess. Laws of 1961, ch. 943, is therefore a local act purporting to authorize Forsyth County to regulate trade and is violative of N. C. Const., Art. II, § 29. It follows that the resolution cannot be sustained under this void grant of power. Can it be sustained under the general grant of police powers in G.S. 153-9(55) to 52 counties, including Forsyth? If in an ordinance or a resolution there is a misrecital of the source of power by which it is passed, it is still valid if there is in fact authority for its enactment. 62 C.J.S., Municipal Corporations § 414(c) (1949); 5 McQuillan, Municipal Corporations § 16.14 (1949 Ed.).

Ch. 1060, §§ 1 — 1½, Sess. Laws of 1963, codified as G.S. 153-9(55), provides:

> "The boards of commissioners of the several counties have power: * * * (55) In that portion of the county, or any township of the county, lying outside the limits of any incorporated city or town, . . . to supervise, regulate, or suppress or prohibit in the interest of public morals, public recreations, amusements, and entertainments; to define, prohibit, abate, or suppress all things detrimental to the health, morals, comfort, safety, convenience and welfare of the people *including but not limited to the regulation and prohibition of the sale of goods, wares and merchandise on Sunday. . . .*" (Italics ours.)

In *Surplus Co. v. Pleasants,* 264 N.C. 650, 142 S.E. 2d 697, we held that G.S. 153-9(55), insofar as it purported to authorize only 52 of the 100 counties to regulate and prohibit *the sale of goods, wares, and merchandise on Sunday,* was a local act regulating trade and thus a violation of N. C. Const., Art. II, § 29. The Raleigh ordinance involved, enacted pursuant to G.S. 153-9(55) and purporting to make it unlawful to conduct or engage in or carry on within the city on Sunday any business except certain specified types thereof, was, therefore, also void. It does

not necessarily follow, however, that the entire section is unconstitutional. " 'A statute may be valid in part and invalid in part. If the parts are independent, or separable, but not otherwise, the invalid part may be rejected and the valid part may stand, provided it is complete in itself and capable of enforcement.' 82 C.J.S., Statutes § 92. Our decisions are in accord." *Constantian v. Anson County,* 244 N.C. 221, 228, 93 S.E. 2d 163, 168.

When enacted by cities and towns under *general* laws, Sunday-observance ordinances which are reasonable and do not discriminate within a class of competitors similarly situated have been upheld as a valid exercise of delegated police power. *Charles Stores v. Tucker,* 263 N.C. 710, 140 S.E. 2d 370; *Clark's Charlotte, Inc. v. Hunter,* 261 N.C. 222, 134 S.E. 2d 364. All such ordinances, when they proscribe buying and selling, whether it be, say, tangible merchandise or a ticket to an amusement or a sporting event, regulate trade under the broad definition of trade which has been adopted by this Court. Since, however, these city ordinances are passed under general laws, G.S. 160-52 and G.S. 160-200(6), (7), and (10), with reference to them we have no conflict between the exercise of the police power and N. C. Const., Art. II, § 29. *State v. McGee,* 237 N.C. 633, 75 S.E. 2d 783. But the General Assembly has not by general law delegated to counties the same authority it has to cities and towns. *Surplus Co. v. Pleasants, supra.* An act is not invalid merely because it is local unless it violates some constitutional provision. *Speedway, Inc. v. Clayton, supra.* N. C. Const., Art. II, § 29, does not forbid local acts passed in the exercise of delegated police power if they do not relate to the matters therein prohibited. *State v. Chestnutt, supra.* See *State v. Dixon, supra* at 177, 1 S.E. 2d at 527 (dissent). "Within extremely broad limits the state legislatures may control practices in the business-labor field, as long as specific constitutional prohibitions are not violated. . . ." 16 C.J.S., Constitutional Law § 188 (1956).

When a county or a city attempts to pass, under a local grant of police power, a Sunday-observance ordinance whose only effect is to regulate trade, the legislation must yield to N. C. Const., Art. II, § 29, whether the purported authority to pass it be specifically conferred in the act or not. *Surplus Co. v. Pleasants, supra; Treasure City v. Clark,* 261 N.C. 130, 134 S.E. 2d 97. If the ordinance prohibits all of a certain type of activity on Sunday — as, *e.g.,* motor-vehicle racing, which might or might not be commercial —, its exercise of police power does not conflict with N. C. Const., Art. II, § 29, for its regulation of trade is merely incidental, or consequential. *State v. Chestnutt, supra.*

Although the power "to define, prohibit, abate, or suppress all things detrimental to the health, morals, comfort, safety, convenience and wel-

fare of the people" granted in G.S. 153-9(55) survived the excision by *Surplus Co. v. Pleasants, supra,* of the next words, *"including but not limited to the regulation and prohibition of the sale of goods, wares and merchandise on Sunday,"* yet that language does not empower the 52 counties to which the statute applies to enact legislation whose effect on trade is not merely incidental. The grant of police power in G.S. 153-9 (55) survives to the extent it violates no constitutional prohibition. The Forsyth County resolution is aimed at a species of activity which is entirely commercial; so it may not be sustained under G.S. 153-9(55). N. C. Const., Art. II, § 29; *State v. Chestnutt, supra.*

The resolution here would, however, have to fail in any event under defendant's second challenge to its constitutionality. The classification of night clubs into (1) those "located within 300 yards of the property on which is located any public school or church building," and (2) all others, for the purpose of closing the former from 2:00 a.m. until 12:00 midnight on Sunday, is both unreasonable and discriminatory. Since schools are not in session at all between 2:00 a.m. and 12:00 midnight on Sunday, the apparent end sought by the resolution is the keeping of quiet in the vicinity of church services on Sunday. This is a legitimate aim of the police power, yet the means here employed to achieve that end exceed what is reasonably necessary to accomplish such an end. Church services are not held during the wee hours of Sunday morning. From 2:00 a.m. until 7:00 a.m., at the earliest, churches are not open. No sound reason appears why during these hours any night clubs should be closed lest it disturb public worship. In this aspect the resolution is unreasonable in its means employed. Nor does reason appear why during these hours a classification on the basis of 300 yards or any other distance is necessary. Herein the resolution is discriminatory.

For these reasons the resolution denies substantive due process. U. S. Const., Amend. XIV, § 1; N. C. Const., Art. I, § 17. See *Winston-Salem v. R. R.,* 248 N.C. 637, 105 S.E. 2d 37; *State v. Ballance,* 229 N.C. 764, 51 S.E. 2d 731.

> " 'Due process' has a dual significance, as it pertains to procedure and substantive law. As to procedure it means 'notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a competent and impartial tribunal having jurisdiction of the cause.' 12 Am. Jur. 267, § 573; 16 C.J.S., Constitutional Law, § 569, p. 1156. In substantive law, due process may be characterized as a standard of reasonableness, and as such it is a limitation upon the exercise of the police power. 6 R.C.L. 433-446; 11 Am. Jur. 998, 1073-1081; 16 C.J.S., Constitutional Law, § 569, p. 1156." *Skinner v. State,* 189 Okla.

235, 238, 115 P. 2d 123, 126, *reversed on other grounds* 316 U.S. 535, 62 S. Ct. 1110, 86 L. Ed. 1655, *conformed to* 195 Okla. 106, 155 P. 2d 715.

See *Surplus Store, Inc. v. Hunter,* 257 N.C. 206, 211, 125 S.E. 2d 764, 767.

Incidentally, it is noted that in the resolution the 300 yards is to be measured not from the church building itself, but from the property line on which the building is located. A church able to purchase adjoining property might, at will, put its line within 300 yards of the club. This, of course, is not the situation here, *i.e.,* not the particular application of the resolution. *Chicot County Dist. v. Bank,* 308 U.S. 371, 377, 60 S. Ct. 317, 320, 84 L. Ed. 329, 334.

Nothing in this record suggests that defendant's night club is now a nuisance which disturbs public worship. Indeed, the evidence is that defendant has never operated his night club during daylight hours on Sunday. If his business should become a nuisance, there is plenty of law to abate it. Gen. Stats., ch. 19; see *Andrews v. Andrews,* 242 N.C. 382, 88 S.E. 2d 88; *Morgan v. Oil Co.,* 238 N.C. 185, 77 S.E. 2d 682.

The resolution under which defendant was sentenced being void, the judgment of the court below is

Reversed.