ARTHUR SMITH AND DAVID P. REULE, ON BEHALF OF THEMSELVES AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED v. THE COUNTY OF MECKLENBURG; ELIZABETH G. HAIR, CHAIRMAN, AND WALTER B. NIVENS AND ROBERT W. BRADSHAW, JR., MEMBERS, OF THE MECKLENBURG COUNTY BOARD OF ELECTIONS; JONES Y. PHARR, JR., CHAIRMAN, AND CHARLES E. KNOX AND FRED A. COCHRANE, MEMBERS, OF THE MECKLENBURG COUNTY BOARD OF ALCOHOLIC CONTROL; W. CHARLES COHOON, CHAIRMAN, AND HAROLD M. EDWARDS AND LAWRENCE C. ROSE, MEMBERS OF THE NORTH CAROLINA STATE BOARD OF ALCOHOLIC CONTROL; AND ROBERT MORGAN, ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA

### No. 90

### (Filed 15 March 1972)

1. **Intoxicating Liquor § 1; Statutes § 2— Mecklenburg County liquor-by-the-drink statute — unconstitutionality**

    Statute authorizing an election in Mecklenburg County to determine whether mixed beverages may be sold by the drink in that county is a local act regulating trade and is therefore void as violative of former Article II, Section 29, and of present Article II, Section 24, of the Constitution of North Carolina. Ch. 617, Session Laws of 1971.

2. **Statutes § 2— general or local act**

    A statute is either "general" or "local," there being no middle ground.

3. **Statutes § 2— "local act" defined**

    A "local act" is an act applying to fewer than all counties, in which the affected counties do not rationally differ from the excepted counties in relation to the purpose of the act.

4. **Statutes § 2— "trade" defined**

    Trade within the meaning of Article II, Section 24, of the North Carolina Constitution is a business venture for profit and includes any employment or business embarked in for gain or profit.

5. **Intoxicating Liquor § 7; Statutes § 2— serving of alcoholic beverages by restaurateur — "trade" within meaning of N. C. Constitution**

    The purchase, sale and serving of alcoholic beverages by a licensed restaurateur would constitute "trade" within the meaning of present Article II, Section 24(1)(j) of the North Carolina Constitution.

6. **Intoxicating Liquor § 1; Municipal Corporations § 4— Mecklenburg liquor-by-the-drink statute — power of governmental unit to engage in restaurant business**

    Neither G.S. 160A-489 nor the act relating to the sale of liquor by the drink in Mecklenburg County confers implied authority to engage in the restaurant business on any municipal corporation or other governmental unit of Mecklenburg County.

APPEAL by defendants County of MECKLENBURG, members of the Mecklenburg County Board of Elections, and members of the Mecklenburg County Board of Alcoholic Control, from *McLean, J.,* October 18, 1971 Schedule B Civil Session of MECK-LENBURG Superior Court, certified, pursuant to G.S. 7A-31, for initial appellate review by the Supreme Court, docketed and argued as No. 160 at Fall Term 1971.

Plaintiffs instituted this action October 6, 1971, seeking to have declared void as violative of designated provisions of the State and Federal Constitutions a statute enacted June 21, 1971, by the General Assembly of North Carolina, entitled "AN ACT AUTHORIZING AN ELECTION IN MECKLENBURG COUNTY TO DETERMINE WHETHER MIXED BEVERAGES MAY BE SOLD BY THE DRINK UNDER RULES AND REGULATIONS PROMULGATED BY THE COUNTY BOARD OF ALCOHOLIC CONTROL," being Chapter 617 of the Session Laws of 1971. Plaintiffs prayed that this statute, hereafter referred to as the Mecklenburg Act, be adjudged unconstitutional and therefore void; and, pending final determination of this action, (1) that the Mecklenburg County Board of Elections be restrained from conducting an election on November 5, 1971, the date it had fixed therefor, and (2) that the Mecklenburg County Board of Alcoholic Control be restrained from issuing mixed-beverage licenses under the Mecklenburg Act.

An order to show cause was issued on October 6, 1971, and the hearing on return thereof was conducted by Judge McLean on October 20, 1971. The only evidence introduced at the hearing consisted of two affidavits of William B. A. Culp, Jr., Executive Secretary of the Mecklenburg County Board of Elections; the verified complaint; the joint affidavit of David P. Reule and Eldridge D. Lewis, "citizens, taxpayers and qualified voters" of Mecklenburg County; a certified copy of Chapter 617, Session Laws of 1971, the Mecklenburg Act; and a certified copy of Chapter 279, Session Laws of 1971, the Moore (County) Act. The only pleading filed by any of the defendants was a motion dated October 20, 1971, by Mecklenburg County and by the members of the Mecklenburg County Board of Elections, pursuant to G.S. 1A-1, Rule 12(b)(6), that the action be dismissed on the ground the complaint failed "to state a claim against these defendants upon which relief can be granted."

The provisions of the Mecklenburg Act are summarized (except when quoted) below.

Section 1 defines certain terms used in the Act.

Section 2 states the purpose is "to control the consumption of alcoholic beverages in places other than private residences by licensing certain persons to sell alcoholic beverages for consumption upon their premises . . . . " It contains declarations as to the position of Mecklenburg County in respect of its location, population, and status as a business, industrial, transportation, and communications center.

Section 3 authorizes *and directs* the Meckenburg County Board of Alcoholic Control "to promulgate a comprehensive plan for the administration, sale and enforcement of mixed beverages by the drink in the County." It also provides that, after approval thereof by the Chairman of the State Board of Alcoholic Control, and prior to September 15, 1971, "the Comprehensive Plan shall be adopted and filed with the Clerk of Superior Court in Mecklenburg County, and published in a newspaper with County-wide circulation."

Section 4 provides that "the Mecklenburg County Board of Elections shall submit to the voters of the County, as soon as practicable, the question of whether mixed beverages by the drink under the Comprehensive Plan adopted by the County Board of Alcoholic Control shall be permitted in the County." It also provides that "[t]wo issues shall be submitted on one ballot," namely, (1) for or against "mixed beverages by the drink and the Comprehensive Plan," *and* (2) for or against " 'brown-bagging' if the mixed beverages issue is passed."

Section 5 provides that if the voters disapprove "mixed beverages by the drink," nevertheless "brown-bagging" is to continue to be legal in the county. If both issues are approved, "no person . . . shall possess both a brown bag license and a mixed beverage license for the same premises at the same time."

Section 6 provides that the Comprehensive Plan shall become operative sixty days from the date it is approved by the voters. It further provides that the Comprehensive Plan "shall not be changed by the County Board of Alcoholic Control," but also states that "the Board shall have full authority to adopt additional or supplemental rules and regulations, with the approval of the Chairman of the State Board of Alcoholic Control, . . . to carry out the intent" of the Act. However, Section 19 provides that "[t]he State Board of Alcoholic Control shall

exercise no authority over the County Board of Alcoholic Control in the exercise of its power and authority to adopt rules and regulations for carrying out the intent of this act."

Section 7 provides that the County Board "may" grant mixed-beverage licenses only to persons operating the following types of establishments: (a) a Grade A restaurant "with a seating capacity at tables for not less than 50 persons and whose gross receipts from the sale of full meals cooked, prepared and served on the premises and non-alcoholic beverages served on the premises shall . . . exceed its gross receipts from the sale of alcoholic beverages"; (b) a hotel or motel with no fewer than 40 permanent bedrooms where food and beverage service is customarily provided in bedrooms and other private rooms by a restaurant, as above defined, located on the premises of and operated by such hotel or motel; (c) a private, non-profit social establishment (defined in section 1(d) to mean "a corporation or association organized and operated solely for objects of a social, recreational, patriotic, or fraternal nature, with duly elected officers or directors, which requires an application for membership and a minimum ten-day waiting period to attain membership, with minimum dues or charges to members of ten dollars ($10.00) per quarter year, which maintains a current memberbership list with the names and addresses of all members in good standing, and which is the owner, lessee, or occupant of premises upon which it regularly maintains and operates a dining room for the sale to its club members, and their authorized guests, of full meals cooked, prepared and served on the premises, which dining room has at least 50 seats") ; and (d) an auditorium or convention center, served by a Grade A restaurant, with a seating capacity and receipts ratio as above delimited.

"Mixed Beverage" is defined in section 1(f) to mean "a drink composed in whole or in part of alcoholic beverages having an alcoholic content of more than fourteen per centum (14%) by volume and served to an individual in a sealed miniature container which shall contain one and six-tenths ounces of alcoholic beverage." Section 1(f) further provides that "the miniature container must be purchased and consumed on [the] premises licensed," that it must be "served with seal unbroken to the individual purchaser," and that "[t]he licensee shall mix the drink after the sealed miniature container has been served to the purchaser."

Smith v. County of Mecklenburg

Section 8 provides that the licensee shall be liable for any violation of the Act or for any violation of any regulation of the County Board promulgated under the Act committed by his employees on his premises.

Section 9 provides that mixed beverages may be sold and consumed on the licensed premises during the hours it is lawful to sell malt beverages.

Section 10 requires all licensees to "keep such records concerning the purchase of alcoholic beverages, the sale of mixed beverages, and the sale of full meals and non-alcoholic beverages, as may be prescribed by the [County] Board," which records are to be open for inspection by the County Board at all times.

Section 11 directs the County Board to review annually the operations of each licensee "to determine whether during the preceding license year the gross receipts from the sale of full meals and non-alcoholic beverages at such establishment were less than the gross receipts from the sale thereat of alcoholic beverages and mixed beverages." When such an improper ratio is revealed, the County Board is directed to revoke the offender's license, not to be issued again for at least one year.

Section 12 gives the County Board discretion to revoke or refuse to grant licenses for violations of the Act or the regulations of the County Board itself. It is further given the discretion, in lieu of revocation, to impose a fine of fifty dollars to one thousand dollars for any violation of the Act or any of its own regulations.

Section 13 prohibits numerous activities, among them: Selling to an intoxicated person, employing or selling to a person under twenty-one, consuming or allowing an employee to consume any alcoholic beverage while on duty, knowingly allowing immoral conduct on the premises, knowingly employing a convicted prostitute (or homosexual, panderer, gambler, habitual law violator, or user or peddler of narcotics), tampering with the contents of any bottle or container of alcoholic beverage, and (in the case of a social establishment) refusing "to make available the current membership list to agents of the [County] Board upon request."

Section 14 provides that purchases of alcoholic beverages by licensees are to be made only from ABC stores located in

Mecklenburg County, and only in one and six-tenths ounce containers with stickers showing that such purchases are made pursuant to the Act and that the tax imposed by section 15 has been paid.

Section 15 provides that each licensee shall pay an annual license fee proportionate to the number of seats located in the licensed establishment and, in addition, a tax of five dollars per gallon of alcoholic beverage. The tax is to be collected by the Mecklenburg ABC stores and paid monthly into the General Fund of the County. "No city, town or other governmental unit" is permitted to levy any "license or privilege tax."

Section 16 provides that any licensee is subject to inspection by the County Board, the State Board, or "any county or city law enforcement officers."

Section 17 provides that any violation of the Act or of any County Board regulation is a misdemeanor punishable in the discretion of the court, except that upon conviction the court is directed to revoke the offender's license, not to be issued again within one year.

Section 18 declares that the provisions of the Act are severable and that the invalidity of any one provision shall not affect valid provisions thereof.

Section 19 provides that the Act "shall not be construed as repealing or modifying any provision of Chapter 18 of the General Statutes or the authority of the State Board of Alcoholic Control relating to those beverages defined in G.S. 18-64 and G.S. 18-60, except to the extent necessary to implement the provisions of this act."

Section 20 provides that the Act shall control in the event of conflict between its provisions and any existing laws and clauses of laws.

Section 21 provides that the Act shall become effective upon its ratification.

Undisputed facts incorporated in Judge McLean's findings include the folowing: On August 11, 1971, the Mecklenburg County Board of Alcoholic Control adopted a Comprehensive Plan, which was approved by the Chairman of the State Board, filed with the Clerk of the Superior Court of Mecklenburg

County and published in a newspaper with county-wide circulation in Mecklenburg County. Thereafter, the Mecklenburg County Board of Elections set November 5, 1971, as the date for the election, and complied with all formalities incident to the conduct thereof. In preparing and planning for the election to be held on November 5, 1971, the County Board of Elections had already spent from the public funds of Mecklenburg County the sum of $7,380.31; and, if the election were held on November 5, 1971, it would spend the further sum of $18,620.00 to defray the expenses thereof.

The Comprehensive Plan adopted August 11, 1971, by the Mecklenburg County Board of Alcoholic Control, is in evidence as Exhibit B of the complaint. Its provisions consist largely of a repetition of the provisions of the Mecklenburg Act.

Judge McLean entered judgment which, after setting forth findings of fact and conclusions of law, provided:

"IT IS NOW THEREFORE, THE JUDGMENT OF THIS COURT:

"(a) That the Motion of the defendants, the County of Mecklenburg and Elizabeth G. Hair, Walter B. Nivens and Robert W. Bradshaw, Jr., members of the Mecklenburg County Board of Elections, that this action be dismissed pursuant to the provisions of G.S. 1A-1, Rule 12(b) (6), of the North Carolina Rules of Civil Procedure on the grounds that the complaint fails to state a claim against said defendants upon which relief can be granted, be and the same is hereby denied.

"(b) That the application of plaintiff for an injunction prohibiting the defendants from holding and conducting the referendum election on November 5, 1971, be and the same is hereby denied.

"(c) That the following portion of Section 3 of Chapter 617 of the 1971 Session Laws, beginning after the word 'County' in line four (4), to wit: 'The Board shall have full authority, subject to and not in conflict with the provisions of this act, to adopt rules and regulations in the plan as to the qualifications of premises and persons to be licensed,' is unconstitutional and void.

"(d) That Section 7(a) [wherein persons operating certain restaurants, hotels and motels, or social establishments, are

Smith v. County of Mecklenburg

described as permissible licensees] in its entirety is unconstitutional and void.

"(e) That Section 7(b) [wherein persons operating certain auditoriums or convention centers are described as permissible licensees] is unconstitutional and void except as it applies to the operation of auditoriums or convention centers by municipal corporations or other governmental units.

"(f) That that portion of Section 12, after the word 'Board' in line nine (9), reading as follows: 'The Board, in its discretion and with the consent of the licensee, may impose a fine of not less than fifty dollars ($50.00) nor more than one thousand dollars ($1,000.00) upon a licensee for each violation of this act or of the rules or regulations of the Board in lieu of a revocation or suspension of a license,' is unconstitutional and void.

"(g) That Section[s] 13(i) [prohibiting employment of persons under 21], (j) [prohibiting selling to persons under 21], (m) [prohibiting delivering of a bottle with unbroken seal], (r) [prohibiting employment of prostitutes, homosexuals, etc.] and (v) [requiring social establishments to make available upon request current membership lists] are unconstitutional and void.

"(h) That that portion of Section 17 following the word 'court' on line six (6), reading as follows: 'If any licensee is convicted of the violation of any of the provisions of this act, or any of the rules or regulations promulgated pursuant thereto, the court in which such conviction occurs is empowered to, and shall immediately declare the license revoked, and notify the Board accordingly, and no license shall thereafter be granted to the same persons within a period of one (1) year from the date of the conviction,' is unconstitutional and void; and

"(i) That the Mecklenburg County Board of Alcoholic Control be and it is hereby permanently enjoined, barred and prohibited from issuing any permits or licenses to any natural person, corporation, partnership, or fraternal or patriotic organization whatsoever under the authority of or by virtue of the provisions contained in Chapter 617 of the Session Laws of 1971, except, however, it may so issue permits and licenses to a municipal corporation or other governmental unit."

Appellants excepted to the judgment and to designated findings of fact and conclusions of law set forth therein.

[An appendix to appellants' brief contains a copy of a "STATEMENT OF RESULT OF THE SPECIAL ELECTION held in the COUNTY OF MECKLENBURG, NORTH CAROLINA, on November 5, 1971," which shows that "37,634 votes were cast FOR Mixed Beverages—Mecklenburg County (Comprehensive Plan) and 27,244 votes were cast AGAINST," and that "38,802 votes were cast FOR 'Brown-bagging' if the mixed beverages issue is passed and 25,501 votes were cast AGAINST."]

*Bailey & Davis, by Gary A. Davis, for plaintiff appellees.*

*Ruff, Perry, Bond, Cobb, Wade & McNair, by James O. Cobb, for the County of Mecklenburg and Members of the Mecklenburg County Board of Elections, defendant appellants.*

*Ervin, Horack & McCartha, by William E. Underwood, Jr., for Members of the Mecklenburg County Board of Alcoholic Control, defendant appellants.*

BOBBITT, Chief Justice.

Plaintiffs' status is solely that of "citizens, taxpayers and qualified voters of the County of Mecklenburg." In support of their motion to dismiss, appellants contended there was no evidence that implementation of the Mecklenburg Act would cause plaintiffs to suffer personal, direct and irreparable injury; hence, they contended, plaintiffs had no standing to test the constitutionality thereof in an action to enjoin its implementation. They cite decisions of this Court, including *Fox v. Commissioners of Durham,* 244 N.C. 497, 500-01, 94 S.E. 2d 482, 485-86 (1956), and *Nicholson v. Education Assistance Authority,* 275 N.C. 439, 447-48, 168 S.E. 2d 401, 405-07 (1969), as authority for their position. However, although contending the denial of their motion to dismiss was erroneous, appellants do not now press that contention. On the contrary, they urge this Court to pass upon the constitutionality of the Mecklenburg Act notwithstanding defects, if any, in respect of plaintiffs' standing to maintain the action.

The public interest impels us to decide without further delay whether the Mecklenburg Act is unconstitutional in whole or in part and to decide the legal significance, if any, of the election held on November 5, 1971. Hence, in accordance with appellants' present position, we have elected not to consider questions relating to plaintiffs' standing to maintain the action.

Smith v. County of Mecklenburg

The Mecklenburg Act was ratified on June 21, 1971, when Article II, Section 29, of the Constitution of North Carolina, in pertinent part, provided: "The General Assembly shall not pass any local, private, or special act or resolution . . . regulating labor, trade, mining, or manufacturing; . . . . Any local, private or special act or resolution passed in violation of the provisions of this section shall be void. The General Assembly shall have power to pass general laws regulating matters set out in this section."

The revised Constitution of North Carolina was adopted by a vote of the people in the general election held November 3, 1970, and became effective July 1, 1971. Article II, Section 24, in pertinent part, provides: "(1) *Prohibited subjects.* The General Assembly shall not enact any local, private, or special act or resolution: . . . (j) Regulating labor, trade, mining, or manufacturing; . . . . (4) *General laws.* The General Assembly may enact general laws regulating the matters set out in this Section."

The quoted provisions of former Article II, Section 29, and of present Article II, Section 24, are identical in all material respects. Decisions cited below which refer directly to former Article II, Section 29, apply equally to present Article II, Section 24.

[1] We hold, in accordance with plaintiffs' contention, that the Mecklenburg Act is *a local act regulating trade* and therefore void as violative of former Article II, Section 29, and of present Article II, Section 24, of the Constitution of North Carolina.

We think it clear that the Mecklenburg Act is a local act when tested by criteria established by our decisions. Reference is made to a comprehensive and scholarly article, "Local Legislation in the North Carolina General Assembly," by Joseph S. Ferrell, 45 N.C.L. Rev. 340-423 (1967), in which the author discusses the decisions of this Court relating to Article II, Section 29, in the three periods characterized as follows: "1917-1938, the period of strict constructions; 1939-1961, the period of reappraisal; and 1961 to the present, the period of *McIntyre v. Clarkson.*" Ferrell, *op. cit.* at 361.

[2, 3] "A statute is either 'general' or 'local'; there is no middle ground." *Surplus Co. v. Pleasants, Sheriff,* 264 N.C. 650, 656, 142 S.E. 2d 697, 702 (1965). Prior to *McIntyre v. Clark-*

*son,* 254 N.C. 510, 119 S.E. 2d 888 (1961), "local" was defined arbitrarily in terms of geography: if an act applied to fewer than fifty counties, it was local. *In re Harris,* 183 N.C. 633, 112 S.E. 425 (1922). Under that rule, the Mecklenburg Act would have been local because it applies solely to Mecklenburg County. In *McIntyre,* however, this Court amplified the definition of a "local act" to mean: an act applying to fewer than all counties, in which the affected counties do not rationally differ from the excepted counties in relation to the purpose of the act.

Under the *McIntyre* rule, which was approved and applied in *Treasure City, Inc. v. Clark,* 261 N.C. 130, 134 S.E. 2d 97 (1964), and in *Surplus Co. v. Pleasants, Sheriff, supra,* the Mecklenburg Act is unquestionably a *local* act.

Restaurants, hotels, motels, and "social establishments" are to be found in most counties of the State; municipally-operated auditoriums and convention or meeting centers are to be found in other counties than Mecklenburg. People who favor mixed beverages by the drink are to be found throughout the State. A majority of the people in many counties have voted in favor of opening ABC stores in their counties, just as have the citizens of Mecklenburg County. These people stand on the same plane with those in Mecklenburg County. The same General Assembly that enacted the Mecklenburg Act also enacted a statute (Chapter 279, Session Laws of 1971) giving the people of Moore County the same right, upon petition signed by 15% of the registered voters of that county; but no other citizens of the State other than those of Mecklenburg and Moore Counties have been given this right.

The Mecklenburg Act recites, in its statement of purpose in section 2, that "control of alcoholic beverages is not susceptible to a uniform system of control throughout all counties of the State" and that "[i]n particular, Mecklenburg County . . . has the State's largest population" and "[t]he City of Charlotte serves as a major trading area for the 2 million people in a 75-mile radius." We are unable to perceive in what way these features differentiate Mecklenburg County from other North Carolina counties with reference to the right of the citizens thereof to decide whether their county should have mixed beverages by the drink. We note that section 2 of the similar Moore Act, while also stating that "control of alcoholic beverages is not susceptible to a uniform system of control throughout all coun-

ties of the State," makes no mention of Moore County's unique features or of features it shares with Mecklenburg County. We further note that subsequent to the enactment of the Mecklenburg Act and the Moore Act, the same General Assembly enacted a comprehensive statute (Chapter 872, Session Laws of 1971, comprising G.S. Chapter 18A-1 to 18A-58, which superseded former G.S. Chapter 18) which, in G.S. 18A-1, declares its purpose as follows: "to establish *a uniform* system of control over the sale, purchase, transportation, manufacture, and possession of intoxicating liquors in North Carolina, and to provide administrative procedures to insure, as far as possible, the proper administration of this Chapter under *a uniform* system throughout the State." (Our italics.)

Our summary of its provisions discloses that the Mecklenburg Act *regulates* with particularity the manner in which a licensed restaurateur may purchase and sell alcoholic beverages. Moreover, such purchase and sale constitute *trade* within the meaning of former Article II, Section 29, and present Article II, Section 24.

[4] "Trade within the meaning of Article II, section 29 of our Constitution is a business venture for profit and includes any employment or business embarked in for gain or profit." *Surplus Co. v. Pleasants, Sheriff, supra* at 655-56, 142 S.E. 2d at 702. Accord: *State v. Dixon,* 215 N.C. 161, 164, 1 S.E. 2d 521, 522 (1939); *Taylor v. Racing Asso.,* 241 N.C. 80, 84 S.E. 2d 390 (1954); *Speedway, Inc. v. Clayton,* 247 N.C. 528, 533, 101 S.E. 2d 406, 410 (1958); *Treasure City, Inc. v. Clark, supra* at 133, 134 S.E. 2d at 99; *State v. Smith,* 265 N.C. 173, 177, 143 S.E. 2d 293, 296-97 (1965). In each of these cases, a local act was held to be an act *regulating trade* and therefore void as violative of former Article II, Section 29.

The *local* act involved in *State v. Dixon, supra,* provided for the licensing and regulation of real estate brokers and salesmen; that involved in *Taylor v. Racing Asso., supra,* provided for the operation of a pari-mutuel dog racing track for private profit by the licensee of a racing commission; that involved in *Speedway, Inc. v. Clayton, supra,* required a promoter of motorcycle or motor vehicle races for profit to obtain insurance coverage for drivers and spectators and also banned races on Sundays and evenings; that involved in *Treasure City, Inc. v. Clark, supra,* provided that "[a]ny person, firm or corporation who

engages on Sunday in the business of selling or sells or offers for sale on such day [certain articles of merchandise], shall be guilty of a misdemeanor"; that involved in *Surplus Co. v. Pleasants, Sheriff, supra,* authorized county commissioners to regulate and prohibit the sale of goods, wares and merchandise on Sunday; and that involved in *State v. Smith, supra,* authorized the Board of Commissioners of Forsyth County to regulate or prohibit the operation of public poolrooms, billiard parlors, dance halls and nightclubs located within three hundred yards of a church or school.

[5] Unquestionably, any restaurateur who elected to purchase, sell and serve alcoholic beverages in the manner prescribed by the Mecklenburg Act would be embarking upon a business venture for gain or profit. No limitation is placed upon what he may charge for the alcoholic beverages he sells and serves. The only limitation is that the gross receipts from the sales of alcoholic beverages must be less than the gross receipts from the sale of full meals and non-alcoholic beverages. We think it clear that the purchase, sale and serving of alcoholic beverages by such licensed restaurateur would constitute "trade" within the meaning of present Article II, Section 24(1) (j).

Appellants cite *Gardner v. Reidsville,* 269 N.C. 581, 153 S.E. 2d 139 (1967), and *State v. Chestnutt,* 241 N.C. 401, 85 S.E. 2d 297 (1955), as authority for their contention that the Mecklenburg Act does not regulate trade. However, the activity regulated or proscribed by the local act involved in these cases was quite different from that regulated by the Mecklenburg Act.

In *Gardner v. Reidsville, supra,* the contested local act authorized an election by the qualified voters of the City of Reidsville to determine whether alcoholic beverage control stores should be established in that city. If favored by the majority, provision was made for the establishment of a City Board of Alcoholic Control. The act provided further "that the City Board shall have all the powers and duties imposed by G.S. 18-45 on County Boards; shall be subject to the same powers and authority of the State Board as are County Boards under G.S. 18-39; and the operation of any City Alcoholic Beverage Control Stores shall be subject to and in pursuance of the provisions of Article 3 of Chapter 18 of the General Statutes, except where in conflict with this Act." With reference to whether their operation constituted "trade" within the meaning of Article II,

Section 29, the ABC stores in Reidsville had the same status as the ABC stores established and maintained pursuant to county-wide elections under G.S. 18-61. The Court, two Justices dissenting, rejected the contention that the operations of the Reidsville ABC stores constituted *trade* within the meaning of Article II, Section 29. The opinion of Justice Branch, for the Court, marked the distinction in these words: " '[T]rade' refers to a business venture embarked in for gain or profit by a person or a business corporation. It refers to commerce engaged in by citizens of the State, and *not a restricted activity conducted by the State* itself." (Our italics.) *Gardner v. Reidsville, supra* at 591-92, 153 S.E. 2d at 148. *Private profit* was held an inherent element of the concept of trade as used in Article II, Section 29.

In *State v. Chestnutt, supra,* the defendants were tried on a warrant which charged that they engaged in, promoted and participated in a motor vehicle race in Wake County on a designated Sunday in violation of a statute which provided: "It shall be unlawful for any person, firm, or corporation to engage in, promote, or in anywise participate in any motorcycle or other motor vehicle race or races on Sunday in Wake County, North Carolina." The defendants appealed *solely* on the ground that this local act regulated labor and trade and therefore was void as violative of Article II, Section 29. The Court held that the act prohibited all motor vehicle races on Sunday wholly without regard to whether profit or other compensation was involved and thus did not regulate labor or trade. The opinion states: "Were the statute directed solely against labor, *e.g.,* compensated employment, or trade, *e.g.,* business ventures, for profit, in relation to the conduct of motor vehicle races on Sunday in Wake County, the question posed would be serious indeed. But where the statute in sweeping terms bans an activity, to wit, all motor vehicle races on Sunday in Wake County, making it a misdemeanor to promote or engage in the proscribed activity, without regard to the commercial or non-commercial character of the activity, the fact that these defendants promote and engage in such activity for profit and for compensation puts them in no better position than those who promote and engage in such activity without reference to profit or compensation." In contrast to the local act considered in *Chestnutt*, the local act considered in *Speedway, Inc. v. Clayton, supra,* applied only to motorcycle or motor vehicle races for profit and was held to be an act which regulated trade.

The court below adjudged that section 7(a) in its entirety is unconstitutional and void, and that section 7(b) is unconstitutional and void "except as it applies to the operation of auditoriums or convention centers by municipal corporations or other governmental units."

We take note of the following provisions of G.S. 160A-489: "Any city is authorized to establish and support public auditoriums, coliseums and convention centers. As used in this section, 'support' includes but is not limited to: acquisition, construction, and renovation of buildings and acquisition of the necessary land and other property therefor; purchase of equipment; compensation of personnel; and all operating and maintenance expenses of the facility. . . . " We find no statute which purports to confer on a county or on a municipal corporation power to engage in the restaurant business. Whether such a statute would be subject to successful challenge on constitutional grounds need not be considered.

[6]   We hold that neither G.S. 160A-489 nor the Mecklenburg Act confers implied authority to engage in the restaurant business on any municipal corporation or other governmental unit of Mecklenburg County. "Neither counties nor municipalities have any inherent legislative powers. Counties are instrumentalities and agencies of the State government and are subject to its legislative control; they possess only such powers and delegated authority as the General Assembly may deem fit to confer upon them. [Citations.] A municipal corporation is a creature of the General Assembly, has no inherent powers, and can exercise only such powers as are expressly conferred by the General Assembly and such as are necessarily implied by those expressly given." *Surplus Co. v. Pleasants, Sheriff, supra* at 654, 142 S.E. 2d at 701.

Furthermore, we construe the provisions of section 7(b) as purporting to authorize the sale of alcoholic beverages by the drink at an auditorium or convention center only by *private* licensed restaurateurs. Hence, the court below erred by the implied holding that a municipality or other governmental unit of Mecklenburg County might become a licensed restaurateur under the Mecklenburg Act. Obviously, such a result was not intended or contemplated by the General Assembly. Moreover, the provisions relating to the sale of liquor by the drink at licensed restaurants located in civic centers and auditoriums are so

interrelated with those relating to such sales in restaurants located elsewhere as to preclude separation.

In view of our holding that the entire Mecklenburg Act is unconstitutional and void as violative of Article II, Section 24(1)(j), of the Constitution of North Carolina, it is unnecessary to consider whether particular provisions thereof would be invalid as violative of other constitutional provisions. Nor do we consider whether the Mecklenburg Act would be vulnerable to attack on other constitutional grounds by a restaurateur whose dining room had fewer seats than fifty or whose operations failed to comply in some other respect with the requirements for the mixed-beverage license.

"The wisdom and expediency of a statute are for the legislative department, when acting entirely within constitutional limits." *McIntyre v. Clarkson, supra* at 515, 119 S.E. 2d at 891. In the exercise of the sovereign police power of the State of North Carolina, the General Assembly may prohibit, regulate or permit the sale of alcoholic beverages. *Gardner v. Reidsville, supra* at 592, 153 S.E. 2d at 149. However, in its exercise of this power it cannot violate constitutional limitations. *State v. Smith, supra* at 179-80, 143 S.E. 2d at 298-99.

The Mecklenburg Act being void in its entirety, the election held November 5, 1971, is a nullity.

The foregoing leads to this conclusion: The judgment of the court below, to the extent it adjudges the Mecklenburg Act to be invalid, is affirmed; but, to the extent it adjudges any portion thereof to be valid, it is reversed. The cause is remanded to the Superior Court of Mecklenburg County for the entry of a judgment in conformity with this opinion.

Affirmed in part; reversed in part.