759 F.2d 1183
 R. Curtis RATCLIFF, Marion C. Havener, and Eugene S. Dumas,
individually and on behalf of other citizens and
residents of Buncombe County, Appellants,
v.
COUNTY OF BUNCOMBE, (The), North Carolina, Buncombe County
Board of Elections, (The), Appellees.
 No. 84-1426.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 4, 1984.
Decided April 25, 1985.
 
 Robert B. Long, Jr. and Steven Warren, Asheville, N.C., for appellants.
 Max O. Cogburn, Asheville, N.C. (Roberts, Cogburn, McClure & Williams, Asheville, N.C., on brief) and James Gary Rowe, Asheville, N.C. (Adams, Hendon, Carson & Crow, Asheville, N.C., on brief), for appellees.
 Before RUSSELL, WIDENER and SNEEDEN, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 This is an appeal from the dismissal of a complaint filed under 42 U.S.C. Secs. 1983 and 1985 alleging violations of the equal protection clause of the fourteenth amendment. The plaintiffs are citizens, residents, voters and taxpayers of Buncombe County, North Carolina, who sued Buncombe County and the Buncombe County Board of Elections (defendants) to prevent the defendants from conducting the 1984 county elections and organizing the county government in accordance with Chapter 129 of the 1983 Session Laws of North Carolina (Chapter 129). The plaintiffs alleged that Chapter 129 denies county commissioners and voters of Buncombe County equal protection of the laws as compared to commissioners and voters of all other counties in North Carolina. The plaintiffs further contend that Chapter 129 creates an arbitrary classification within Buncombe County itself and thereby denies certain citizens within the county equal protection under the laws. The district court dismissed the plaintiffs' complaint after determining that the complaint failed to state a claim upon which relief could be granted. See FRCP 12(b)(6). Because we find that the district court should have abstained from ruling on the merits of the complaint, we vacate and remand with instructions to retain the case on the docket pending resolution of the state law issues in the state courts.
 
 
 2
 Plaintiffs filed their complaint in the district court on January 5, 1984, seeking to prohibit the defendants from conducting the 1984 county elections in conformity with Chapter 129. The court dismissed the complaint in April 1984, and, accordingly, the defendants conducted the county elections in accordance with Chapter 129. By its express terms, Chapter 129 did not become effective until the first Monday in December 1984, except that the November 1984 election had to be conducted in accordance with its terms. At the time the complaint was filed, plaintiff R. Curtis Ratcliff was the incumbent Chairman of the Buncombe County Board of Commissioners (the Board) and, as such, served as chief administrative officer, apparently under Chapter 936 N.C. Session Laws, 1963, as amended. Marion C. Havener, another plaintiff in this action, was vice-chairman of a citizens' group supporting self-determination of the form of county government, and plaintiff Eugene S. Dumas filed suit on the basis of his status as citizen, resident, voter, and taxpayer of Buncombe County.
 
 
 3
 Prior to the 1983 enactment of Chapter 129 by the North Carolina General Assembly, Buncombe County had a form of county government consisting of a five member Board of Commissioners which had four elected commissioners and a separately elected chairman of the Board. The chairman of the Board also served as chief administrator of the county by reason of his position as chairman. Chapter 129 alters this scheme, however, by eliminating the separately elected office of chairman and, instead, providing for the annual election of a chairman and vice-chairman by the Board. Chapter 129 also places Buncombe County under the county manager form of government and specifically prohibits the chairman or any other Board member from simultaneously holding the office of county manager.
 
 
 4
 The plaintiffs have alleged several grounds to support their contention that Chapter 129 violates the equal protection clause. Generally, they contend that Chapter 129 creates arbitrary classifications of voters and commissioners both within Buncombe County and outside of the county.[1] In this respect, plaintiffs allege that the voters and commissioners of Buncombe County are treated differently than the voters and commissioners in all other counties because: Chapter 129 mandates that Buncombe County operate under a county manager form of government while all other counties are free to choose their own form of government pursuant to the county home rule statutes. See N.C.Gen.Stat. Secs. 153A-58 to 104; Chapter 129 prohibits direct election of a chairman by the voters in Buncombe County while the voters in all other counties are not similarly prohibited, see id. Sec. 153A-58(4)(b); and Chapter 129 prohibits county commissioners in Buncombe County from simultaneously holding the office of county manager while commissioners in all other counties are not similarly prohibited, see id. Sec. 153A-81(2). Although the complaint does not allege that Chapter 129 creates arbitrary classifications within Buncombe County, plaintiffs now assert that since Chapter 129 prohibits commissioners from simultaneously holding the office of county manager, this is an arbitrary disqualification which is not placed on those who are not commissioners within the county.
 
 
 5
 The district court considered the plaintiffs' equal protection contentions and determined that the complaint failed to state any claim of denial of equal protection. We do not consider the merits of the court's equal protection analysis and express no opinion thereupon, because we think the district court should have abstained from deciding the case on federal constitutional grounds since, as we will show, there are unsettled questions of state law that may be dispositive of the case on state law grounds. See Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).
 
 
 6
 We were informed at oral argument that, since this suit was filed, plaintiff Ratcliff has been re-elected to his former position of chairman under the procedure mandated by Chapter 129. Although Ratcliff was not permitted to run separately for the office of chairman, we were told that he was elected as a Board commissioner in the 1984 elections and that the Board elected him chairman in December 1984. The effect that Chapter 129 now has on Ratcliff is to deny him the opportunity to hold the position of county manager while he serves as a commissioner on the Board. Nevertheless, we have also been informed by the attorneys that Ratcliff has been appointed interim county manager even though he is disqualified by Chapter 129 from serving as county manager. See N.C.Gen.Stat. Sec. 153-84.
 
 
 7
 This dual office holding prohibition in Chapter 129 arguably conflicts with the North Carolina Constitution to the extent that Chapter 129 prohibits dual office holding solely in Buncombe County. Article VI, Section 9(1), of the North Carolina Constitution provides in pertinent part:
 
 
 8
 No person shall hold concurrently any two or more appointive offices or places of trust or profit, or any combination of elective and appointive offices or places of trust or profit, except as the General Assembly shall provide by general law. (Emphasis added)We think that a state court could interpret Section 9(1) as establishing that the General Assembly may deal with dual office holding provisions only by general law. The General Assembly has enacted a general law pursuant to Section 9(1) to permit dual office holding in the State. N.C.Gen.Stat. Sec. 128-1.1(b) provides:
 
 
 9
 Any person who holds an elective office in State or local government is hereby authorized by the General Assembly, pursuant to Article VI Sec. 9 of the North Carolina Constitution to hold concurrently one other appointive office, place of trust or profit, in either State or local government.
 
 
 10
 Id. Moreover, dual office holding, of the very type prohibited by Chapter 129 for Buncombe County, is specifically authorized by the general laws relating to the county manager system. If a county has adopted the county manager form of government, N.C.Gen.Stat. Sec. 153A-81(2) provides that:
 
 
 11
 [t]he board of commissioners may ... [c]onfer upon the chairman or some other member of the board of commissioners the duties of county manager.
 
 
 12
 Notwithstanding the language in Section 9(1) of the North Carolina Constitution which may indicate that dual office holding must be dealt with only by general law, Chapter 129 under N.C.Gen.Stat. Sec. 153A-1(5) is a local act that prohibits dual office holding solely in Buncombe County.[2] In pertinent part, Section 2 of Chapter 129 provides:
 
 
 13
 Buncombe County shall be under the county-manager form of government as provided in [N.C.Gen.Stat. Secs. 153A-81 to 84]; provided however, that neither the chairman nor any other member of the board of commissioners may simultaneously hold the office of county manager.
 
 
 14
 The effect of such a dual office prohibition in Buncombe County is to deny Buncombe County commissioners the opportunity to simultaneously hold the position of county manager even though all other commissioners in all other counties that have adopted the county manager form of government are not similarly prohibited from holding both offices. See N.C.Gen.Stat. Sec. 153A-81(2). In other words, the General Assembly has authorized by general law dual office holding by county commissioners and county managers, see N.C.Gen.Stat. Secs. 128-1.1(b) and 153A-81(2), but, by local act, the General Assembly has precluded Buncombe County commissioners from simultaneously holding the office of county manager.
 
 
 15
 Thus, to the extent that Chapter 129 governs dual office holding solely in Buncombe County, Chapter 129 would seem to be a local act rather than a general law. Furthermore, the dual office holding provision in Chapter 129 may well control over the general authorization of such because, in North Carolina, a special and particular statute controls over a statute that is general in nature. See Lowder v. All Star Mills, Inc., 301 N.C. 561, 273 S.E.2d 247, 257 (1981); Seders v. Powell, 298 N.C. 453, 259 S.E.2d 544, 549 (1979). Since we think it is at least arguable that Section 9(1) of the State Constitution provides that dual office holding is a matter to be governed only by general law, a state court could determine that Chapter 129's local prohibition on dual office holding in Buncombe County conflicts with the State Constitution or must give way to general law. Furthermore, we believe that this is an unsettled state law issue which could be dispositive of the federal constitutional issues. Therefore, under the doctrine of abstention established in Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), because the North Carolina courts have not considered the validity of Chapter 129 under the State Constitution or as in conflict with the general law, we should not provide a "tentative answer which may be displaced by a State adjudication." Id. at 500, 61 S.Ct. at 645. Accordingly, because these unsettled questions of state law may make it unnecessary to decide plaintiffs' equal protection claims, we are of opinion that the district court should have abstained from ruling on the merits of those claims. See Cox v. Planning District 1 Community Mental Health and Mental Retardation Services Board, 669 F.2d 940, 942 (4th Cir.1982); Public Citizen, Health Research Group v. Commission on Medical Discipline in Maryland, 573 F.2d 863, 865 (4th Cir.1978). See generally 17 Wright, Miller & Cooper Secs. 4241 and 4243.
 
 
 16
 It is a matter for the state courts to determine whether Chapter 129 is in conflict with the State Constitution or whether it is otherwise invalid. Should the state courts determine that Chapter 129's local prohibition on dual office holding is invalid, it would be unnecessary for a federal court to determine whether the dual office holding provision of Chapter 129 violates the equal protection clause of the fourteenth amendment. Moreover, if the state courts were to determine that the dual office holding provision was invalid, it then might well be appropriate for the state courts to determine whether the remaining provisions of Chapter 129 are separable. State v. Smith, 265 N.C. 173, 143 S.E.2d 293, 297-98 (1965) (statute can be valid in part and invalid in part under certain circumscribed conditions). In this connection, we should mention that the attorneys also tell us that the voters of Buncombe County by referendum have in effect already repealed a part of Chapter 129 by providing for a separately elected Chairman of the Board commencing with the next general election. See N.C.Gen.Stat. Sec. 153A-58(4)(b).
 
 
 17
 Since the state courts may determine that Chapter 129 is invalid, in whole or in part, as a matter of state law, the plaintiffs' complaint should be retained on the district court's docket to assure complete adjudication on the merits of the federal claims. Accordingly, we vacate the judgment of the district court dismissing the plaintiffs' complaint for failure to state a claim upon which relief could be granted, and remand with instructions to retain the complaint on its docket pending resolution of the unsettled questions of state law.
 
 
 18
 VACATED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 Plaintiff Ratcliff separately alleged that Chapter 129 was arbitrary, capricious, whimsical, and contrary to the general laws of the State as it applied specifically to him because the General Assembly enacted Chapter 129 with the improper motive of preventing Ratcliff from serving simultaneously as an elected commissioner and county manager. In particular, Ratcliff contends that the General Assembly, "an overwhelmingly Democratic body," enacted this special legislation for the specific purpose of preventing Ratcliff, a Republican, from being elected as the administrative head of the county government
 
 
 [2]
 The defendants maintain that the dual office holding prohibition in Buncombe County is merely a codification of a general practice of counties within the State in employing competent, professional county managers. This is urged in support of the theory that Chapter 129 is not a local act but is general law. In this respect, the defendants stated that by October 1981, 85 North Carolina counties employed a manager or administrator, 5 counties (including Buncombe County) employed a full time chairman in the capacity as manager or administrator, and 10 counties had neither a manager nor administrator. Despite this alleged codification, it seems most doubtful that Chapter 129 could be considered a general law since it explicitly and in terms affects only Buncombe County and seems to be within the codified definition of "Local act" in N.C.Gen.Stat. 153A-1(5)