R. Curtis RATCLIFF; Marion C. Havener; and Eugene S. Dumas, individually and on behalf of other citizens and residents of Buncombe County, Plaintiffs,

v.

The COUNTY OF BUNCOMBE, NORTH CAROLINA, Defendant.

Civ. No. A–C–84–10.

United States District Court, W.D. North Carolina, Asheville Division.

July 2, 1987.

Robert B. Long, Jr., Steve R. Warren, Long, Parker, Payne & Warren, Asheville, N.C., for plaintiffs.

James Gary Rowe, Shuford, Best, Rowe & Brondyke, Asheville, N.C., for defendant.

## MEMORANDUM OF DECISION

SENTELLE, District Judge.

Plaintiffs are before this Court attacking legislation establishing the governmental form of Buncombe County as violative of both the federal and state constitutions. The matter now arises on cross motions for summary judgment; the parties agreeing that there are no "genuine issues of material fact" and that the issues involved are ones of law for resolution by the Court. Fed.R.Civ.P. 56. Before answering those issues, a procedural history of the circuitous route by which the case reached its present posture is necessary to a full understanding of what the issues are and certainly of what the proper answer or answers might be.

### I. FACTS AND PROCEDURAL HISTORY

The plaintiff, R. Curtis Ratcliff, is and was at all times pertinent to this litigation Chairman of the Buncombe County Board of Commissioners. Prior to the enactment of Chapter 129 of the 1983 Session Laws of North Carolina (Chapter 129), Buncombe County functioned with a governmental form consisting of a five-member board of commissioners, having four elected commissioners and a separately elected chairman of the board with the chairman serving as the chief administrative officer of the County. This form of government was organized pursuant to Chapter 153A of the General Statutes of North Carolina, specifically § 153A–58. In 1983, the North Carolina General Assembly enacted a bill entitled "An Act to Provide that Buncombe County shall be Governed by a Board of Commissioners Elected Together, and Shall Be Under the County-Manager Plan" which was applicable only to Buncombe County and dictated its form of government while leaving North Carolina's other ninety-nine counties free to chose one or any combination of several optional forms of county government set forth in § 153A–58, supra.[1] Among other things, the Session Law, codified as 1983 N.C. Session Law 129 (Chapter 129), provided that all commissioners would be elected together; that the Board would chose its chairman, rather than the chairman being elected by the people; and that no member of the board could be employed thereafter as county manager, which manager would displace the county commission chairman as the

1. The session law in question reads as follows:

The General Assembly of North Carolina enacts:

Section 1. Section 1 of Chapter 936, Session Laws of 1963 (as amended under G.S. 153A–58 to increase the size to four members plus the chairman) is rewritten to read:

"Section 1. The Board of Commissioners shall consist of five members. In 1984 and quadrennially thereafter, five commissioners shall be elected for four-year terms. A chairman and vice-chairman shall be annually elected by the board of commissioners in accordance with G.S. 153A–39."

Section 2. Section 2 of Chapter 936, Session Laws of 1963 as amended by Chapter 54, Session Laws of 1977 is rewritten to read:

"Section 2. Buncombe County shall be under the county-manager form of government as provided in part 2 of Article 5 of Chapter 153A of the General Statutes; provided, however, that neither the chairman nor any other member of the board of commissioners may simultaneously hold the office of county manager."

Section 3. Section 3 of Chapter 936, Session Laws of 1963 as amended by Chapter 698, Session Laws of 1965 and Chapter 903, Session Laws of 1969 is rewritten to read:

"Section 3. The Board of Commissioners shall fix their own salary, allowance and other compensation in accordance with G.S. 153A–92(b)(4), except that the first time salaries are set under this section it may be done other than by adoption of the budget ordinance."

Section 4. This act shall not affect the terms of office of the four current commissioners or the chairman of the board of commissioners.

Section 5. This act shall become effective on the first Monday in December of 1984, except that the 1984 election shall be conducted in accordance with Section 1.

chief administrative officer of the county. Ratcliff and the other plaintiffs then filed this action alleging that Chapter 129 violated the rights of plaintiffs under the equal protection clause of the Constitution of the United States, Amendment XIV, and 42 U.S.C. § 1983 and § 1985. The action further alleged that the legislation was violative of the Constitution of North Carolina, Article VI, § 9(1).[2] On April 5, 1984, this Court per U.S. District Court Judge (now Senior Judge) Woodrow W. Jones issued an opinion determining that the Session Law was not in violation of the equal protection clause or any other federally protected right raised in the case and dismissing the action. Plaintiffs appealed.

On May 1, 1985, the United States Court of Appeals for the Fourth Circuit issued an opinion, *Ratcliff v. County of Buncombe*, 759 F.2d 1183 (1985) (*Ratcliff I*), vacating the district court judgment and remanding the case "with instructions to retain the complaint on [the district court's] docket pending resolution of the unsettled questions of state law." *Id.* at 1187. The further history of this case and the specifics of the state law questions triggering the abstention will be discussed in the body of this opinion.

## II. THE ABSTENTION

As the Fourth Circuit opinion notes, the questions of state law involved the Session Law above cited, Article VI, § 9(1) of the North Carolina Constitution, N.C.Gen.Stat. § 128–1.1(b) and N.C.Gen.Stat. § 153A–81(2). Since the Fourth Circuit thought it was "at least arguable" that the State constitution or the general law of the State could render Chapter 129 invalid, and since the Fourth Circuit further believed "that this is an unsettled state law issue which could be dispositive of the federal constitutional issues," the Circuit Court held that "the district court should have abstained from ruling on the merits of those claims." (Citations omitted). *Ratcliff I, supra,* at 1187.

Obedient to the Circuit Court's mandate, this Court per Judge Jones abstained but "retain[ed] the complaint on its docket pending resolution of the unsettled questions of state law." *Id.* In further obedience to the appellate opinion, plaintiffs herein took the state questions to the courts of North Carolina in a state action for declaratory judgment filed October 15, 1985.[3] The North Carolina Superior Court, Charles Lamb presiding, allowed summary judgment for the defendant on December 12, 1985, on state grounds of standing without reaching the merits of either the state or federal constitutional claims. Plaintiffs appealed and June 3, 1986, the North Carolina Court of Appeals affirmed the Superior Court on the standing ground again without reaching the merits of the state law claim which triggered the abstention. *Ratcliff v. County of Buncombe*, 81 N.C.App. 153, 343 S.E.2d 601 (1986) (*Ratcliff II*). Plaintiffs thereafter sought review from the North Carolina Supreme Court pursuant to N.C.Gen.Stat. § 7A–30. That Court denied review in conference and without opinion by Order of October 14, 1986. Plaintiffs now return to this Court on amended complaint setting forth the state constitutional and federal constitutional claims as briefly outlined above.

The state law claim now is directed toward the ineligibility of Ratcliff to be considered for or employed as county manager while serving as a member or chairman of the board of county commissioners. A further claim alleged in the original complaint attacking the method of election has been mooted as the voters of Buncombe County on November 6, 1984, adopted a referendum restoring the separate election of the chairman of county commissioners and plaintiffs voluntarily dismissed their claim against the Board of Elections. The dual office holding provision is not subject to referendum under North Carolina law.

The first question that confronts this Court is whether the abstention previously

---

**2.** The text of this provision and the argument of plaintiffs will be discussed in detail *infra.*

**3.** North Carolina has no statutory procedure for certification of questions by federal courts. See generally C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, Vol. 17, § 4248.

mandated by the Court of Appeals is still in order. That mandate was based on the line of abstention cases commencing with *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The Pullman-type abstention is designed "to avoid decision of a federal constitutional question where the case may be disposed of on questions of state law." Wright & Miller, *supra*, Vol. 17, § 4241, see also § 4242, § 4243. In the *Pullman* case itself, a three-judge district court had decided the state law question in such a fashion that the federal constitutional question therein was then unavoidable. The Supreme Court noting that the state courts could have decided the state question in a fashion that would have struck down the state regulatory scheme under attack on grounds of state law, avoided the decision of the federal equal protection question raised in that case. In the interest of comity and judicial economy, the Supreme Court, therefore, decreed that the federal court should have stayed its hand pending a resolution of the state question so as to avoid the federal courts making a "forecast" of state law which might be upset by a state decision on some later date. It was to avoid just such a result that the Fourth Circuit in this case, finding the validity of Chapter 129 under the state general statutes and constitution to be an "unsettled state law issue which could be dispositive of the federal constitutional issues," mandated in the words of *Pullman* that, "we should not provide a 'tentative answer which may be displaced by a state adjudication.'" (Citation omitted). *Ratcliff I, supra,* at 1187.

The question now before this Court is: Where a federal court has abstained pursuant to the doctrine of *Railroad Commission v. Pullman, supra,* and the question has been presented to a state court for adjudication but the state court has denied plaintiff relief without reaching the merits of the state court claim standing before the federal question, does the mandate for abstention retain vitality? This Court holds that it does not. While neither litigant has provided this Court with any authority on the proposition, there are several useful guides in the existing law. In an abstention case later than *Pullman,* the Supreme Court noted "... if the state court has declined to decide the state question because of the litigant's refusal to submit without reservation the federal question as well, the district court will have no alternative but to vacate its order of abstention." *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 422 n. 12, 84 S.Ct. 461, 468 n. 12, 11 L.Ed.2d 440 (1964). This language of the Supreme Court has been cited by at least one learned treatise as support for the proposition that where a state court deems itself disabled from deciding the state issues on advisory opinion grounds, "federal court is required to vacate its stay and decide all the issues." Wright & Miller, *supra,* § 4243 and § 4246. The Fifth Circuit has followed this philosophy in at least two decisions, *Paul Revere Life Ins. Co. v. First National Bank in Dallas,* 359 F.2d 641 (1966), and *United Services Life Ins. Co. v. Delaney,* 358 F.2d 714 (1966). While the reasons for North Carolina's refusal to decide the question in this case differ from those stated in *England* and the Fifth Circuit's opinions, the compulsion for decision is no less persuasive here. The Fourth Circuit noted in *Cox v. Planning District,* 669 F.2d 940 (4th Cir.1982), that a perpetual abstention where the state courts refuse on unrelated grounds to answer the question which first occasioned the abstention could result in the plaintiffs being left without remedy. "It is conceivable that the Virginia courts would determine that the Board's procedure is constitutionally and statutorily permissible, and at the same time deny the appellants relief on other grounds. State statutes of limitations and rules regarding their tolling could cut off the appellants' ability to proceed in federal court." (Citations omitted). *Id.* at 943. Therefore, in *Cox,* the Court directed the district court to keep the controversy pending on its docket and stay the action pending disposition of the state court proceedings. It appears to this Court that the reasoning of the Fourth Circuit in *Cox* is useful in determining this question. It fur-

ther appears that unless this Court now lifts the abstention and proceeds to decision of the state question, and if necessary, the federal constitutional question, plaintiffs will be left without remedy just as the court feared in *Cox.* Since it is normally the law that abstention is within the sound discretion of the federal court, e.g., *Public Citizen Health Research Group v. Commission on Medical Discipline,* 573 F.2d 863 (4th Cir.1978), and since that discretion has once been exercised by the Fourth Circuit in favor of abstention to give the courts of North Carolina a chance to answer the state question, and since the courts of North Carolina have on unrelated grounds declined to exercise that opportunity, this Court now deems it to be in its discretion to lift the abstention and proceed.

### III. STANDING

■ As noted above, the state court declined to entertain this action on the grounds of standing. Judge Lamb ruled, and the Court of Appeals affirmed in *Ratcliff II,* that "the law is well settled that 'one who voluntarily proceeds under a statute and claims benefits thereby conferred will not be heard to question its constitutionality in order to avoid its burdens'." (Citations omitted.) *Ratcliff II, supra,* 81 N.C.App. at 154, 343 S.E.2d 601. The first question on this subject then is: Does the state determination on the question of standing bind this Court? The answer is a well established no. "It [the question of standing] is, of course, a question of federal law." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

■ Therefore, the question becomes: "Have the [plaintiffs] alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for elimination of difficult constitutional questions?" *Id.* This time the answer is yes. At least as to plaintiff Ratcliff, Judge Jones held in his original opinion "that there is a present controversy between the plaintiff Ratcliff in his individ-

ual capacity and the defendants ..." The Fourth Circuit by plain implication in *Ratcliff I* affirmed this holding since the opinion reversing Judge Jones spoke only to the abstention question, but directed that the district court "retain the complaint on its docket pending resolution of the unsettled questions of state law." *Ratcliff I, supra,* at 1187. Plainly had the Fourth Circuit disagreed with Judge Jones on the standing question, the decision of the appellate court would have been for affirmance of his dismissal albeit on different grounds. It can only be concluded then that the defendants herein either abandoned that argument at the appellate stage or that the Fourth Circuit agreed with Judge Jones. In either event, Judge Jones' ruling finding Ratcliff to have standing now constitutes law of the case. "Under the law of the case doctrine, any determination as to an issue in the case which has previously been determined by the district court and affirmed by the court of appeals is now binding upon the parties, as well as the district court." *Hendon v. North Carolina State Board of Elections,* 633 F.Supp. 454, 462 (W.D.N.C.1986), citing, *inter alia, Stonega Coke and Coal Co. v. Price,* 116 F.2d 618, 621 (4th Cir.1940).

■ In addition to the binding decision on standing under the law of the case doctrine, there are other compelling authorities dictating the same result. The applicable analysis is the one stated in the second quotation above from *Baker v. Carr.* Here, Ratcliff at least has "alleged such a personal stake in the outcome of the controversy" as *Baker* requires. Since 1972 and by quadrennial election thereafter, plaintiff Ratcliff was elected Chairman of the Buncombe County Board of Commissioners and as such served as the chief administrative officer of that County with commensurate duties, responsibilities, and salary until the enactment of the state law here under attack. Since the enactment of this Act, Ratcliff, while re-elected Chairman of the Board and functioning interim as chief administrative officer, is barred from even being considered for the position which now carries the duties, responsibili-

ties, and salary to which he was previously entitled. Therefore, whether the law is valid or not, it is certainly one in the validity of which Ratcliff holds the requisite interest. Defendant argues here, as it successfully contended before the state courts, that Ratcliff by accepting election as Chairman of the County Commissioners under the questioned statutes has "accepted the benefits of the Act ... and ... thus will not be heard to challenge the constitutionality of a statute under which he has benefited." *Ratcliff II, supra,* 81 N.C.App. at 155, 343 S.E.2d 601. Under applicable federal principles of standing, this appears to create no bar. While the general proposition of law may be a valid one, it does not apply to this set of facts. This is analogous to the argument advanced by the State of Virginia in *Harmon v. Forssenius,* 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). In that case, plaintiffs had sued to have declared unconstitutional a Virginia statute requiring the payment of a poll tax or substitute compliance by way of affidavit before the exercise of the right to vote. The Supreme Court in holding for the plaintiffs first faced a standing argument similar to the one advanced by Buncombe County in this case. One of the plaintiffs, Henderson, had registered and paid the poll tax. The state advanced this as a ground for dismissal. The Supreme Court citing, *inter alia, Baker v. Carr, supra,* held "[t]he District Court was patently correct in rejecting the state's argument that appellee Henderson lacked standing to maintain this action." *Id.* at 533, n. 6, 85 S.Ct. at 1181, n. 6.

Patently then, Ratcliff at least has standing to maintain this action. It further appears that the other plaintiffs may have standing under *Baker v. Carr, supra,* but, since the relief prayed by all is identical, it would be an exercise in futility to pursue that question instead of proceeding to decide the cross motions for summary judgment.

## IV. THE QUESTIONS OF STATE LAW

Since this Court has now determined that abstention is no longer in order and that plaintiff Ratcliff has standing to bring this action, this Court must now determine whether Chapter 129 is invalid under the state laws of North Carolina, before reaching the question of validity of the Chapter under the equal protection clause of the Fourteenth Amendment.[4] This question of validity under state law has been dealt with although in necessarily speculative terms by the Fourth Circuit in *Ratcliff I, supra.* The Constitution of North Carolina provides in Article VI, § 9(1):

"No person shall hold concurrently any two or more appointive offices or places of trust or profit, or any combination of elective and appointive offices or places of trust or profit, except as the General Assembly shall provide by *general law.*" (Emphasis added.)

As further noted by the Fourth Circuit, "the General Assembly has enacted a general law pursuant to § 9(1) to permit dual office holding in the state. N.C.Gen.Stat. 128–1.1(b) provides:

'Any person who holds an elective office in state or local government is hereby authorized by the General Assembly pursuant to Article VI, Section 9 of the North Carolina Constitution to hold concurrently one other appointive office, place of trust or profit, in either state or local government.'

"Moreover, dual office holding of the very type prohibited by Chapter 129 for Buncombe County, is specifically authorized by the general laws relating to the county manager system. If a county has adopted the county manager form of government, N.C.Gen.Stat. § 15A–81(2) provides that:

'[T]he board of commissioners may ... [confer] upon the chairman or some other member of the board of commissioners the duties of county manager.'

"Notwithstanding the language in Section 9(1) of the North Carolina Constitution which may indicate that dual office holding

---

**4.** *Railroad Commission v. Pullman, supra, Paul Revere Life Ins. Co. v. First National Bank in Dallas, supra, United Services Life Ins. Co. v.* *Delaney, supra,* and other authorities collected in Section II of this Opinion.

must be dealt with only by general law, Chapter 129 ... is a local act that prohibits dual office holding solely in Buncombe County." *Id.* at 1185, 1186.

The Fourth Circuit then noted, in dealing with defendants' contention that the dual office holding prohibition in Buncombe County was merely a codification of the practice°conducted in the other counties under the county manager system, that "it seems most doubtful that Chapter 129 could be considered a general law since it explicitly and in terms only effects Buncombe County and seems to be within the codified definition of 'Local Act' in N.C. Gen.Stat. § 15A–1(5)." *Id.* at 1186, n. 2.

That definition cited by the Fourth Circuit reads:

" 'Local Act' means an act of the General Assembly that applies to one or more specific counties, cities, or counties and cities by name. 'Local Act' is interchangeable with the term 'special act,' 'special law,' 'public-local act,' and 'private act,' is used throughout this Chapter in preference to those terms, and means a local act as defined in this subdivision without regard to the terminology employed in local acts or other portions of the General Statutes." [5]

Since the abstention doctrine for the reasons set forth above is no longer available, this Court must now speak by way of holding rather than dictum; and since Chapter 129 "applies to one ... specific count[y]," this Court now holds that Chapter 129 is a "Local Act" within the meaning of the Constitution and laws of the State of North Carolina.

While the discussion of state law to this point might be sufficient to declare Chapter 129 invalid under the Constitution of the State, a further examination of the North Carolina State Constitution makes that result even more compelling. Article XIV, § 3, of this State's constitution, which was not called to the attention of the Fourth

Circuit at the time of *Ratcliff I*, provides in pertinent part:

"Whenever the General Assembly is directed or authorized by this Constitution to enact general laws or general laws uniformly applicable in every county, city and town, and other unit of local government, or in every local court district, no special or local act shall be enacted concerning the subject matter directed or authorized to be accomplished by general uniformly applicable laws, and every amendment or repeal of any law relating to such subject matter shall also be general and uniform in its effect throughout the state. General laws may be enacted for classes defined by population or other criteria. General laws uniformly applicable throughout the state shall be made applicable without classification or exception in every unit of local government of like kind, such as every county, or every city and town, but need not be made applicable in every unit of local government in the state. General laws uniformly applicable in every county, city and town, and other unit of local government, or in every local court district, shall be made applicable without classification or exception in every unit of local government, or in every local court district as the case may be."

Such a law as Chapter 129 appears to be explicitly forbidden by both Article VI, § 9 and Article XIV, § 3 of the Constitution of North Carolina.

It is clear that the subject of dual office holding in North Carolina can only be validly treated by general laws uniformly applicable throughout the State. Beyond contravention, the office of county commissioner is an "office" as contemplated by Article VI, § 9. *Harris v. Watson*, 201 N.C. 661, 664, 161 S.E. 215 (1931). Similarly, as the office of county manager involves comprehensive duties as "the chief administrator of county government" (N.C. Gen.Stat. § 153A–82), and the manager apparently must take the oath of office as an

---

**5.** As North Carolina's Supreme Court held in a case involving two local acts "both the enactments in question here apply only to Forsyth County and are clearly local acts." *State v.* *Smith,* 265 N.C. 173, 177, 143 S.E.2d 293, 296 (1965). Citing *McIntyre v. Clarkson,* 254 N.C. 510, 119 S.E.2d 888 (1961).

appointed official of the county government, as provided by N.C.Gen.Stat. § 153A–26, the office of county manager is also a "public" office within the meaning of Article VI, § 9. This is so as "[o]ne who holds a public office is a public officer within the meaning of Article XIV, Section 7." (Now Article VI, § 9.) *Harrington v. Renner*, 236 N.C. 321, 327, 72 S.E.2d 838 (1952). Further, Chapter 129, § 2, specifically refers to the "office of county manager." Thus, it is incumbent upon the state legislature to deal with the subject of dual office holding of county commissioners and county manager only through general laws.

This Court, therefore, expressly holds that the dual office holding provision of Chapter 129 is invalid as a matter of state constitutional law.

The remaining question of state law is whether the entirety of Chapter 129 is void or only that portion directly prohibiting dual office holding.

As previously noted, a portion of the Act has already been negated by referendum of the people. Given that fact and the voiding of the dual office holding provision by this Court, a portion of 129 remaining for review is found in Section II. That section dictates that "Buncombe County shall be under the county manager form of government as provided in Part II of Article V of Chapter 153A of the General Statutes ..." As the Fourth Circuit noted in *Ratcliff I*, upon determination "that the dual office holding provision was invalid, it then might well be appropriate. ... to determine whether the remaining provisions of Chapter 129 are separable." *Id.* at 1187. The Fourth Circuit then cited *State v. Smith, supra,* for the proposition that a "statute can be valid in part and invalid in part under certain circumscribed conditions." Those circumscribed conditions are set forth in *State v. Smith* as " 'a statute may be valid in part and invalid in part. If the parts are independent, or separable, but not otherwise, the invalid part may be rejected and the valid part may stand, provided it is complete in itself and capable of enforcement.' 82 C.J.S., Statutes § 92."

(Emphasis added.) *Id.* 265 N.C. at 179, 143 S.E.2d 293. Plaintiffs contend that if this portion of the statute survives review under state law, it is invalid as the denial of equal protection since the citizens of all other counties are free to chose their own form of government from among the several options contained in Chapter 153A–58.

█ If this statute does survive review under state law, then it appears to this Court that a resolution of the equal protection question is inevitable. However, it appears to this Court that the statute is not separable. As plaintiffs note, it contains no saving clause. As the *Smith* decision above quoted and the authorities collected in the cited section of C.J.S. reveal "the whole statute will be declared invalid where the valid and invalid provisions are so connected and interdependent in subject matter, meaning, or purpose as to preclude the belief or presumption or conclusion that the legislature would have passed the one without the other, but, on the contrary justify the belief or conclusion that the legislature intended them as a whole and would not have enacted a part only." 82 C.J.S., Statutes § 93. See also authorities collected therein as n. 68, 69. In the instant case, the remaining sections of Chapter 129 and that part now declared void are "connected and interdependent in subject matter, meaning, [and] purpose." The statute as a whole is indicative of a legislative intent to dictate a particular form of government for Buncombe County. There is no indication that the legislature intended one part of the statute to impose a partial form of government on Buncombe County independent on the other parts. This case is thus distinguishable from the North Carolina decision in *Starbuck v. Havelock*, 252 N.C. 176, 113 S.E.2d 278 (1960), wherein the Supreme Court of North Carolina invalidated certain qualifications of the mayor of the Town of Havelock while saving portions of the same statute which created the municipal corporation itself. There the court expressly held that the saved portion was "independent and separable from the remainder of the Act and, when rejected, [did] not impair but [permitted] the exercise of Legislative power to accomplish the prime purpose of the Act,

that is, permitting the inhabitants to determine whether the area should or should not become a town." 252 N.C. at 179, 113 S.E.2d at 280.

In this case since no such primary purpose is discernable, this Court holds that the Act is not separable and the whole must be voided. This being the case, the Court will not reach the equal protection clause. See *Railroad Commission v. Pullman, supra,* and *Ratcliff I, supra.*

## CONCLUSION

For the reasons stated above, the Court will issue an order contemporaneously herewith declaring the challenged act to be invalid and restraining the County of Buncombe from refusing to consider plaintiff Ratcliff for employment as county manager. The decision of this Court with regard to the inseparability of the portion of Chapter 129 preventing Buncombe County from choosing its own form of government may at some later date result in the County of Buncombe choosing some form other than the commission-manager form. The means and method of such a choice are not before the Court at this time and the Court renders no opinion on that subject.

## JUDGMENT

For the reasons set forth more fully in the Memorandum of Decision filed contemporaneously herewith,

IT IS ORDERED, ADJUDGED AND DECREED that:

1. Defendant's motion for summary judgment is DENIED.

2. Plaintiffs' motion for summary judgment is ALLOWED.

3. 1983 N.C.Session Law 129 is declared invalid.

4. The County of Buncombe, its agents, assigns and all others acting under authority thereof are hereby enjoined and restrained from refusing to consider R. Curtis Ratcliff for employment as county manager of Buncombe County.