IN THE SUPREME COURT OF NORTH CAROLINA

No. 197A19

Filed 28 February 2020

IN THE MATTER OF: S.E., S.A., J.A., V.W.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 7 March 2019 by Judge Wesley W. Barkley in District Court, Burke County. This matter was calendared for argument in the Supreme Court on 5 February 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*N. Elise Putnam for petitioner-appellee Burke County Department of Social Services.*

*Womble Bond Dickinson (US) LLP, by John E. Pueschel and Patricia I. Heyen, for respondent-appellee guardian ad litem.*

*Anné C. Wright for respondent-appellant mother.*

HUDSON, Justice

Respondent-mother appeals from an order entered by the trial court terminating her parental rights to her children, S.E. (Sara), S.A. (Shanna), J.A. (Jacob), and V.W. (Vera).[1] After careful consideration of respondent-mother's

---

[1] The minor children will be referred to throughout this opinion as "Sara," "Shanna," "Jacob," and "Vera," which are pseudonyms used to protect the children's identities and for ease of reading. The children also had an older sibling who was part of the underlying abuse, neglect, and dependency case but turned eighteen years old prior to the termination of parental rights case.

challenges to the trial court's jurisdiction and conclusion that grounds exist to terminate her parental rights on the basis of her willful failure to pay a reasonable portion of the cost of care for the children during their placement in DHHS custody, we affirm the trial court's order.

On 26 June 2016, the Burke County Department of Social Services ("DSS") obtained non-secure custody of Sara, Shanna, Jacob, and Vera, and filed a petition alleging they were abused, neglected, and dependent juveniles. DSS had received a report alleging Jerry A. had been physically assaulting the children.[2] At the time of the filing the children were respectively, twelve, nine, eight, and two years old. DSS interviews with the children uncovered specific and repeated instances of physical abuse of the children and regular instances of domestic violence between respondent-mother and Mr. A. Shanna also disclosed numerous instances of sexual abuse by Mr. A., of which she had informed respondent-mother and an aunt. Respondent-mother was questioned about the sexual abuse and initially denied knowing about it, but she subsequently admitted Shanna had told her about the abuse. DSS also learned respondent-mother and the children had been involved in a child protective services case in Oklahoma. Respondent-mother had temporarily left Mr. A., which led to the closure of the Oklahoma case. She then moved to North Carolina with the children, where she reconciled with Mr. A.

---

[2] Jerry A. is the biological father of Shanna and Jacob.

After multiple continuances due to DSS's difficulty serving the children's fathers, the trial court conducted a hearing on the petition on 23 March 2017 and entered its adjudication order on 18 April 2017. Respondent-mother and Mr. A. stipulated to the relevant facts and allegations in the petition, and the court found them to be true. The court found Mr. A. had physically abused Shanna, Jacob, and respondent-mother; and he had sexually abused Shanna on multiple occasions. Respondent-mother knew about the physical and sexual abuse of the children and failed to protect them. Respondent-mother had been convicted of intentional child abuse inflicting serious injury on 2 November 2016. She was sentenced to a suspended term of 38 to 58 months imprisonment and placed on supervised probation for 24 months. Mr. A. had been convicted of first-degree statutory rape on 13 February 2017. He was sentenced to an active term of 221 to 326 months imprisonment. The court adjudicated all the children to be abused, neglected, and dependent juveniles. Disposition was continued, but the trial court kept custody of the children with DSS and suspended visitation with their parents.

The trial court entered its dispositional order on 1 June 2017. The court found aggravated circumstances existed in that a parent sexually abused a child in the home while the other children were home and the respondent-mother allowed the abuse to occur. Reunification efforts were initially found not to be in the best interests of the children except for Vera, whose biological father had been located. DSS was in the process of completing a home-study under the Interstate Compact on the

Placement of Children ("ICPC") on Vera's father's home to see if he would be an appropriate placement for her. The court continued custody of the children with DSS and directed DSS to provide respondent-mother with one two-hour visitation with the children, after which she was to have no further contact with them. DSS was also directed to identify and inform respondent-mother of programs that would assist her with the issues she was facing. The primary permanent plan for Vera was identified as reunification with her father, with a secondary plan of guardianship. The primary permanent plan for Sara, Shanna, and Jacob was identified as adoption, with a secondary plan of guardianship.

The trial court conducted four permanency planning hearings from 18 May 2017 to 9 August 2018. Respondent mother offered an out-of-state relative as a possible placement for the children, which required DSS to request and obtain a home study under the ICPC. In its orders from the first three hearings, the court consistently found the children may benefit by being adopted, but they were not free to be adopted due to the outstanding home studies of their relatives and Vera's father. By the fourth hearing, however, the trial court found the ICPC home studies for Vera's father and respondent's relatives indicated their homes were not appropriate placements for the children. In its permanency planning order entered from the 9 August 2018 hearing, the trial court set the primary permanent plan for Vera as adoption and the secondary permanent plan as reunification with her father. The

primary and secondary plans for Sara, Shanna, and Jacob remained adoption and guardianship.

DSS filed a petition to terminate parental rights to the children on 27 September 2018. As to respondent-mother, DSS alleged grounds existed to terminate her parental rights on the bases of abuse, neglect, willfully leaving the children in foster care for more than 12 months without making reasonable progress to correct the conditions that led to their removal, willfully failing to pay a reasonable portion of the cost of care for the children during their placement in DHHS custody, and for committing a felony assault resulting in serious bodily injury to a child residing in the home. *See* N.C.G.S. § 7B-1111(a)(1)–(3), (8) (2017). After a hearing on 7 February 2019, the trial court entered an order on 7 March 2019, terminating respondent-mother's parental rights to the children.[3] The court concluded grounds existed to terminate respondent-mother's parental rights on the bases of neglect, willfully leaving the children in foster care for more than 12 months without making reasonable progress to correct the conditions that led to their removal, and willfully failing to pay a reasonable portion of the cost of care for the children during their placement in DSS custody.[4] The court further concluded terminating respondent-

---

[3] Mr. A. relinquished his parental rights to Shanna and Jacob on 18 October 2018. The trial court's order also terminated the parental rights of the fathers of Sara and Vera. None of the fathers are parties to this appeal.

[4] At the hearing, DSS elected not to proceed on N.C.G.S. § 7B-1111(a)(8).

mother's parental rights was in the children's best interests. Respondent-mother appeals.

Respondent-mother first argues the trial court's order as to Sara is void for lack of subject matter jurisdiction and must be vacated.[5] Respondent-mother contends the court lacked subject matter jurisdiction over Sara's underlying juvenile case, because it failed to meet the requirements of the Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA"). *See* N.C.G.S. §§ 50A-201–204 (2017). She argues an allegation in the initial juvenile abuse, neglect, and dependency petition that one of the children reported child protective services in Oklahoma took the children out of her home put the trial court on notice there was a prior Oklahoma custody determination involving the children, which required the trial court to contact the Oklahoma court to determine if that court would cede jurisdiction to the North Carolina trial court. Respondent-mother's arguments are misplaced.

"The existence of subject matter jurisdiction is a matter of law and cannot be conferred upon a court by consent. Consequently, a court's lack of subject matter jurisdiction is not waivable and can be raised at any time." *In re K.J.L.*, 363 N.C. 343, 345–46, 677 S.E.2d 835, 837 (2009) (citations and quotation marks omitted). Nonetheless,

"where the trial court has acted in a matter, every

---

[5] Respondent-mother only challenges the trial court's subject matter jurisdiction over the juvenile case involving Sara and concedes the court had jurisdiction over the cases involving the other children.

> presumption not inconsistent with the record will be indulged in favor of jurisdiction . . . ." Nothing else appearing, we apply "the *prima facie* presumption of rightful jurisdiction which arises from the fact that a court of general jurisdiction has acted in the matter." As a result, "[t]he burden is on the party asserting want of jurisdiction to show such want."

*In re N.T.*, 368 N.C. 705, 707, 782 S.E.2d 502, 503–04 (2016) (first quoting *Cheape v. Town of Chapel Hill*, 320 N.C. 549, 557, 359 S.E.2d 792, 797 (1987) then quoting *Williamson v. Spivey*, 224 N.C. 311, 313, 30 S.E.2d 46, 47 (1944)).

The UCCJEA applies to proceedings in which child custody is at issue, including those involving juvenile abuse, neglect, dependency and termination of parental rights; and a trial court must comply with its provisions to obtain jurisdiction in such cases. *See* N.C.G.S. §§ 50A-102(4), -201(a)–(b) (2017). Generally, North Carolina courts have jurisdiction to make a child custody determination if North Carolina is the home state of the child. N.C.G.S. § 50A-201(a)(1). " 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." N.C.G.S. § 50A-102(7) (2017). If a court of another state has home state jurisdiction, North Carolina courts do not have jurisdiction unless one of several statutory exceptions applies. *See* N.C.G.S. § 50A-201(a)(2)–(4).

Respondent-mother contends the allegations in the initial juvenile petition established that a prior child-custody determination had been made as to Sara in

Oklahoma[6], and the trial court failed to take the requisite action under the UCCJEA to obtain jurisdiction over her case. Respondent-mother, however, relies on allegations and inferences to support her argument and has not met her burden of showing the trial court lacked jurisdiction over Sara's case. She neglects to mention the finding of fact made by the trial court in its initial adjudication order, wherein the court found only Shanna was removed from respondent-mother's custody by child protective services in Oklahoma. Furthermore, the respondent-mother stipulated to the court that the child protective services matter in Oklahoma had been closed, a fact she had a duty to disclose pursuant to N.C.G.S. § 50A-209(a) (2017). Given these stipulations and other record facts, it was reasonable for the trial court to infer that Oklahoma did not have continuing jurisdiction under the UCCJEA.

Sara had lived with respondent-mother in North Carolina during the six months immediately preceding the filing of the juvenile petition, and North Carolina was her home state. The record before us establishes the trial court thus had "home state" jurisdiction under the UCCJEA to make an initial child-custody determination regarding Sara. *See* N.C.G.S. § 50A-201(a)(1). The trial court's orders granting DSS custody of Sara are not void for lack of subject matter jurisdiction, and DSS had standing to file the petition to terminate respondent-mother's parental rights to Sara pursuant to N.C.G.S. § 7B-1103(a)(3).

---

[6] Oklahoma has also adopted the UCCJEA. *See* Okla. Stat. tit. 43 §§ 551-101–402 (2019).

We next address respondent-mother's argument that the trial court erred in concluding grounds exist to terminate her parental rights due to her willful failure to pay a reasonable portion of the cost of care for the children although physically and financially able to do so, pursuant to N.C.G.S. § 7B-1111(a)(3). Respondent-mother concedes she paid nothing toward the cost of care for her children and could have done so but argues her failure to pay was not willful. She contends she did not know she could pay towards the cost of care for her children, did not know how to pay towards the cost, and could not reasonably have been expected to do so. We disagree.

Termination of parental rights under the North Carolina Juvenile Code involves a two-stage process—an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109, -1110 (2017). "At the adjudicatory stage, the petitioner bears the burden of proving by 'clear, cogent, and convincing evidence' the existence of one or more grounds for termination under section 7B-1111(a) of the General Statutes." *In re A.U.D.*, 832 S.E.2d 698, 700 (N.C. 2019) (quoting N.C.G.S. § 7B-1109(f) (2017)). "If a trial court finds one or more grounds to terminate parental rights under N.C.G.S. § 7B-1111(a), it then proceeds to the dispositional stage," *id.*, where it "determines whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a) (2017).

At the time DSS filed its petition, a court could terminate parental rights upon finding that:

> The juvenile has been placed in the custody of a county

> department of social services . . . and the parent has for a continuous period of six months immediately preceding the filing of the petition or motion willfully failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.

N.C. Gen. Stat. § 7B-1111(a)(3) (Supp. 2018). The cost of care "refers to the amount it costs the Department of Social Services to care for the child, namely, foster care." *In re Montgomery*, 311 N.C. 101, 113, 316 S.E.2d 246, 254 (1984). "A parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based upon the parent's ability or means to pay." *In re Clark*, 303 N.C. 592, 604, 281 S.E.2d 47, 55 (1981).

Respondent-mother's argument that she did not know she had to pay a reasonable portion of the cost of care for her children or how to do so is fundamentally without merit. The absence of a court order, notice, or knowledge of a requirement to pay support is not a defense to a parent's obligation to pay reasonable costs, because parents have an inherent duty to support their children. *See In re T.D.P.*, 164 N.C. App. 287, 289, 595 S.E.2d 735, 737 (2004) (citing *In re Wright*, 64 N.C. App. 135, 139, 306 S.E.2d 825, 827 (1983) ("Very early in our jurisprudence, it was recognized that there could be no law if knowledge of it was the test of its application. Too, that respondent did not know that fatherhood carries with it financial duties does not excuse his failings as a parent; it compounds them.")), *aff'd per curiam*, 359 N.C. 405, 610 S.E.2d 199 (2005); *see also In re Biggers*, 50 N.C. App. 332, 339, 274 S.E.2d 236, 241 (1981) (holding "[a]ll parents have the duty to support their children within their

means . . . .”). Given her inherent duty to support her children, respondent cannot hide behind a cloak of ignorance to assert her failure to pay a reasonable portion of the cost of care for her children was not willful. Moreover, respondent-mother was on notice of her failure to pay something towards the cost of care for her children, as shown by the trial court's repeated findings in each of its permanency planning orders that none of the respondent-parents were paying child support.

In support of this ground to terminate respondent's parental rights, the trial court found:

> 42.     The respondent mother is an able bodied person capable of gainful employment and is capable of paying a sum greater than zero per month toward the support of the minor children during the six months prior to the filing of the petition to terminate her parental rights. The respondent is employed . . . and has been for over one year prior to the date of this hearing and earning at least $600 to $700 per week.
>
> 43.     During the six months prior to the filing of the petition to terminate parental rights, a period of time from March 27, 2018 through September 27, 2018, the respondent mother paid zero toward the support of the minor children.
>
> 44.     A reasonable portion of the cost of care for the minor children for the respondent mother to have paid during the six months prior to the filing of the petition to terminate said respondent's parental rights would have been an amount greater than zero per child per month.

Apart from her argument that she had no knowledge she was required to pay a reasonable portion of the cost of care for her children or how to do so, which we have

rejected, respondent-mother does not challenge the evidentiary basis for these findings of fact. These findings are supported by clear, cogent, and convincing evidence and are binding on appeal. *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019) (citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)). We hold that the findings in this case fully support the trial court's conclusion that grounds exist to terminate respondent-mother's parental rights based upon her willful failure to pay a reasonable portion of the cost of care for the children during their placement in DHHS custody pursuant to N.C.G.S. § 7B-1111(a)(3). The trial court's conclusion that one ground existed to terminate parental rights "is sufficient in and of itself to support termination of [respondent-mother's] parental rights[,]" *In re T.N.H.*, 372 N.C. at 413, 831 S.E.2d at 62, and we need not address her arguments challenging the remaining grounds. Respondent-mother does not challenge the trial court's conclusion that termination of her parental rights is in the children's best interests. Accordingly, we affirm the trial court's order terminating respondent-mother's parental rights to Sara, Shanna, Jacob, and Vera.

AFFIRMED.